2013 OK 43

**James M. STARKEY, Sr., Plaintiff/Appellee,**

v.

**The OKLAHOMA DEPARTMENT OF CORRECTIONS and Justin Jones as Director, Defendants/Appellants.**

No. 109,556.

Supreme Court of Oklahoma.

June 25, 2013.

---

John M. Dunn, Tulsa, Oklahoma, for Plaintiff/Appellee.

Cornelius Leader, and John David Hadden, Asst. Attys. Gen., Oklahoma City, Oklahoma, for Defendants/Appellants.

COMBS, J.

¶ 1 This matter was assigned to this office on February 6, 2013. According to the Record, Plaintiff/Appellee James M. Starkey, Sr., (hereinafter, "Starkey") pled nolo contendere and received a deferred adjudication on October 12, 1998, to a charge of sexual assault upon a minor child in the District Court of Calhoun County, Texas. The act occurred on January 15, 1997, and the age of the victim(s) was 15 years old.[1] Under Texas law the act amounted to a second degree felony.[2] The Oklahoma Department of Cor-

---

**1.** The document entitled "Additional Conditions of Community Supervision" is on a standard form which repeatedly uses the singular "victim" yet it names two persons, who we assume according to this document were both 15 years of age.

**2.** The record doesn't reflect the specific Texas statute Starkey was charged under, however, the statute concerning sexual assault at the time of the commission of the crime is found in Tex. Penal Code Ann. § 22.011 (Vernon 1996). It provides:

Sexual Assault

(a) A person commits an offense if the person:

(1) intentionally or knowingly:

(A) causes the penetration of the anus or female sexual organ of another person by any means, without that person's consent;

(B) causes the penetration of the mouth of another person by the sexual organ of the actor, without that person's consent; or

(C) causes the sexual organ of another person, without that person's consent, to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor; or

(2) intentionally or knowingly:

(A) causes the penetration of the anus or female sexual organ of a child by any means;

(B) causes the penetration of the mouth of a child by the sexual organ of the actor;

(C) causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor; or

(D) causes the anus of a child to contact the mouth, anus, or sexual organ of another person, including the actor.

(b) A sexual assault under Subsection (a)(1) is without the consent of the other person if:

(1) the actor compels the other person to submit or participate by the use of physical force or violence;

(2) the actor compels the other person to submit or participate by threatening to use force or violence against the other person, and the other person believes that the actor has the present ability to execute the threat;

(3) the other person has not consented and the actor knows the other person is unconscious or physically unable to resist;

(4) the actor knows that as a result of mental disease or defect the other person is at the time of the sexual assault incapable either of appraising the nature of the act or of resisting it;

(5) the other person has not consented and the actor knows the other person is unaware that the sexual assault is occurring;

(6) the actor has intentionally impaired the other person's power to appraise or control the other person's conduct by administering any substance without the other person's knowledge;

(7) the actor compels the other person to submit or participate by threatening to use force or violence against any person, and the other person believes that the actor has the ability to execute the threat;

(8) the actor is a public servant who coerces the other person to submit or participate;

(9) the actor is a mental health services provider who causes the other person, who is a patient or former patient of the actor, to submit or participate by exploiting the other person's emotional dependency on the actor; or

rections and Justin Jones as Director (hereinafter, "Department") point out in Defendants Oklahoma Department of Corrections And Justin Jones Combined Response To Plaintiff's Motion For Summary Judgment And Motion For Summary Judgment (hereinafter, "response and motion for summary judgment") the equivalent crime of sexual assault under Oklahoma law is found in § 1123 of Title 21 of the Oklahoma Statutes; Lewd or Indecent Proposals or Acts to child Under 16. The deferred adjudication provided as follows:

ADJUDICATION DEFERRED PLACED ON COMMUNITY SUPERVISION FOR TEN (10) YEARS, $4,000.00 FINE, COURT COSTS, 320 CSR HOURS, 60 DAYS IN THE CALHOUN CO JAIL, RESTITUTION, DEFENDANT WAIVES HIS RIGHT TO APPEAL, SEX OFFENDER RULES.

In paragraph (27) of the document entitled "Additional Conditions of Community Supervision" he was required to register under Article 6252–13c.1 of the Texas Sex Offender Registration Program.[3]

¶2 The May 10, 2011, trial court Order found Starkey has resided in Oklahoma since 1998. The record, however, is vague on exactly when Starkey entered Oklahoma after his Texas deferred adjudication and therefore does not show the exact date upon which he was first subject to the Sex Offender Registration Act (hereafter, "SORA"), 57 O.S. § 581 et seq. Two versions of § 582 of SORA were in effect during 1998. The 1997 version was in effect prior to November 1, 1998, and the 1998 version was in effect on November 1, 1998.[4] Both, however, provided as follows:

The provisions of the Sex Offenders Registration Act, Sections 581 et seq. of this title, shall apply to any person who ... enters this state on or after September 1, 1993, and who has received a deferred judgment for a crime or attempted crime which, if committed or attempted in this state, would be a crime or an attempt to commit a crime provided for in Section ... [list of crimes omitted] 1123 of Title 21 of the Oklahoma Statutes.

Title 57 O.S. Supp.1997 and 1998, § 582.

¶3 SORA also required a person convicted in another jurisdiction to register with the Department of Corrections and local law enforcement. Section 583 provided as follows:

B. Any person who has been convicted of an offense on or after November 1, 1989, in another jurisdiction, which offense if committed or attempted in this state, would have been punishable as one or more of the offenses listed in Section 582 of this title and who enters and remains in this state shall register as follows:

Title 57 O.S. Supp.1997, § 583 (in effect throughout 1998).

The trial court found at the time Starkey received his "deferred sentence" he was only required to register in Oklahoma for 10 years. The Department's response to the motion for summary judgment, however, asserted Starkey was initially required to register for 10 years following completion of his ten-year probation, thus requiring a total of 20 years registration.

(10) the actor is a clergyman who causes the other person to submit or participate by exploiting the other person's emotional dependency on the clergyman in the clergyman's professional character as spiritual adviser.
(c) In this section:
(1) "Child" means a person younger than 17 years of age who is not the spouse of the actor.
(2) "Spouse" means a person who is legally married to another.
(d) It is a defense to prosecution under Subsection (a)(2) that the conduct consisted of medical care for the child and did not include any contact between the anus or sexual organ of the child and the mouth, anus, or sexual organ of the actor or a third party.

(e) It is an affirmative defense to prosecution under Subsection (a)(2) that the actor was not more than three years older than the victim, and the victim was a child of 14 years of age or older.
(f) An offense under this section is a felony of the second degree.

3. Article 6252–13c.1 was redesignated as 62.01 in 1997 and again redesignated as 62.001 in 2005. The current Sex Offender Registration Program can be found at Tex.Code.Crim. Proc. Ann. art. 62.001 et seq. (Vernon 2011).

4. Title 57 O.S. Supp.1997, § 582 (1997 Okla. Sess. Laws c. 260, § 3 (eff. November 1, 1997)) and 57 O.S. Supp.1998, § 582 (1998 Okla. Sess. Laws c. 347, § 1 (eff. November 1, 1998)).

¶ 4 Effective November 1, 2007, SORA was amended to require the Department of Corrections or a court to assign a numeric risk level to a person "who will be subject to the provisions of the Sex Offenders Registration Act." Title 57 O.S. Supp.2007, §§ 582.1–582.2. The Department created a "risk assessment review committee" to develop or select a sex offender screening tool and to monitor its use.[5] The required screening tool was to use an objective point system under which an offender would be assigned a designated number of points for various factors with the offense being the basis for the minimum numeric risk level. The risk levels were as follows:

1. Level one (low): a designated range of points on the sex offender screening tool indicating that the person poses a low danger to the community and will not likely engage in criminal sexual conduct;

2. Level two (moderate): a designated range of points on the sex offender screening tool indicating that the person poses a moderate danger to the community and may continue to engage in criminal sexual conduct; and

3. Level three (high): a designated range of points on the sex offender screening tool indicating that the person poses a serious danger to the community and will continue to engage in criminal sexual conduct.

Title 57 O.S. Supp.2007, § 582.5.

¶ 5 The Legislature passed an emergency measure 6 months later to require a risk assessment be made for offenders who enter the state.[6] Section 583 was also amended to set the registration period for the 3 levels. It provided "a person [who] has been convicted or received probation within the State of Oklahoma … shall be required to register" for 15 years if the person is a level 1 offender, 25 years for a level 2 offender, and for life if a person is a level 3 offender or classified as a habitual or aggravated sex offender.[7]

¶ 6 Section 582.5(D) of SORA further allowed the Department of Corrections, the risk assessment review committee or a court to override a risk level if the risk level assessed was not an accurate prediction of the risk the offender poses on the community.[8]

¶ 7 Many of these provisions were again amended effective November 1, 2009.[9] The committee at this time was renamed the "sex offender level assignment committee" and given the duty to determine, based on federal law, the level assignment of offenders subject to registration. The screening tool was replaced with guidelines which are based on the 3 levels listed above without any designated range of points. The offense was amended to serve as the sole basis for the level assigned to the offender. The amendments further provide, the committee, the Department of Corrections or a court may only increase the level assignment and not decrease it.[10] This last amendment, with few exceptions, effectively extinguished any chance to have a level assignment reduced from that, as in Starkey's case, determined exclusively by the sex offender level assignment committee.

¶ 8 Starkey's ten-year registration period was set to expire in 2008. Just prior to this period ending, the Department assigned Starkey a level 3 life-time registration classification with no opportunity for a hearing. Starkey filed his Petition in August 2009 pursuant to 57 O.S. Supp.2008, § 582.5(D) of SORA to have a court override his level assignment. Starkey's filing occurred just months before the effective date of the 2009 amendment extinguishing his right to have his level assignment reduced. Starkey requested the court reduce his level assignment to level 1, find he had been registered for the required period of time and order him discharged from any further obligations.

¶ 9 Starkey filed his Plaintiff's Motion For Summary Judgment on December 10, 2010, and Plaintiff's Supplemental Brief on

5. Title 57 O.S. Supp.2007, § 582.5.

6. 2008 Okla. Sess. Laws c. 94, § 1 (emerg. April 29, 2008).

7. Title 57 O.S. Supp.2007, § 583(C) and (D).

8. Title 57 O.S. Supp.2007, § 582.5(D).

9. 2009 Okla. Sess. Laws c. 404, §§ 3–4.

10. Title 57 O.S. Supp.2009, § 582.5(D).

February 25, 2011. He asserted he should be granted summary judgment because at the time he was sentenced he was not even required to register under Oklahoma law. Starkey asserts § 583 only required a person "convicted" of an offense in another jurisdiction to register. He argues because he received a deferred adjudication he did not have a conviction.[11] In his motion he alleged his procedural due process rights were violated because the level assignment was made without a means to challenge the classification. He requested the court find he was not required to register under SORA and order the Department to remove him from the State Sex Offender List.

¶ 10 Starkey's argument extensively relies upon an unpublished Oklahoma Court of Criminal Appeals opinion, *State of Oklahoma v. Timothy Lynn Smith*, S–2009–944, filed October 28, 2010. His supplemental brief also cites *Reimers v. State ex rel. Dept. of Corrections*, 2011 OK CIV APP 83, 257 P.3d 416, a published Oklahoma Court of Civil Appeals opinion, which found *State v. Timothy Lynn Smith* persuasive.

¶ 11 In *State v. Timothy Lynn Smith* the trial court held Smith was not required to register under SORA. Smith entered a plea in August 1999 and received a deferred sentence. At that time, SORA only required persons who were convicted or received a suspended sentence to register.[12] Subse-quent amendments to SORA required certain individuals receiving a deferred sentence to register.[13] The trial court found the ex post facto clause would be violated if these amendments were applied retroactively to require Smith to register. On appeal, the Oklahoma Court of Criminal Appeals determined before a law could violate the ex post facto clause it would have to be applied retroactively.[14] The court further found the subsequent amendments were substantive and substantive laws are to be applied prospectively unless the legislature clearly expresses its intent to apply them retroactively.[15] It determined there was no clear expression to give these amendments a retroactive effect. The Court of Criminal Appeals held the subsequent amendments did not apply to Smith and therefore he need not register. It also found it did not need to determine whether the *"Ex Post Facto Clause"* was violated because the law was not intended to be applied retroactively.

¶ 12 *Reimers v. State* was decided nine months after *State v. Timothy Lynn Smith* and found that opinion to be "erudite and persuasive." [16] The primary issue in *Reimers v. State* was whether a sex offender's registration period could be retroactively increased after he was sentenced and would such a retroactive increase violate the ex post facto clause. The plaintiff challenged the retroactive increase of his registration period

---

11. The "deferred adjudication" he received is the equivalent of a "deferred judgment" a/k/a "deferred sentence" in Oklahoma found in 22 O.S. § 991c. The Oklahoma Court of Criminal Appeals has found that "[i]n a deferred sentence the district court retains jurisdiction and only a conditional order, not a judgment and sentence, is entered." *Nguyen v. State*, 1989 OK CR 6, ¶ 5, 772 P.2d 401, 403, *overruled on other grounds by Gonseth v. State*, 1994 OK CR 9, ¶ 9, 871 P.2d 51, 54. A deferred sentence "is not a conviction until such time as the trial court pronounces judgment and sentence." *Belle v. State*, 1973 OK CR 438, ¶ 11, 516 P.2d 551, 552. Title 22 O.S. § 991c(C), at all relevant times to this case, provides if the defendant completes all the conditions of the deferred judgment the defendant shall be discharged without a court judgment of guilt. Therefore, if a defendant completes the conditions of the deferred judgment and the court so finds, there will be no conviction. Some statutes define a deferred judgment as a conviction for a particular purpose; however, the Sex Offenders Registration Act (SORA), 57 O.S. § 581 *et seq.*, does not have such a definition.

12. Title 57 O.S. Supp.1998, §§ 582 and 583.

13. In 1999, amendments to § 582 and 583 required persons receiving a probationary term to register (1999 Okla. Sess. Laws c. 336, §§ 1 and 2 (eff. Nov. 1, 1999)). In 2000, § 583 was amended to specifically require certain persons receiving a deferred sentence to register (2000 Okla. Sess. Laws c. 349, § 3 (eff. Nov. 1, 2000)).

14. Citing *Castillo v. State*, 1998 OK CR 9, ¶¶ 7–8, 954 P.2d 145, 147.

15. Citing *Welch v. Armer*, 1989 OK 117, ¶ 27, 776 P.2d 847, 850, *Nestell v. State*, 1998 OK CR 6, ¶ 5, 954 P.2d 143, 144, and *State v. Watkins*, 1992 OK CR 50, ¶ 5, 837 P.2d 477, 478.

16. *Reimers v. State ex rel. Dept. of Corrections*, 2011 OK CIV APP 83, ¶ 31, 257 P.3d 416, 421.

based upon subsequent amendments to SORA. These amendments were made after his plea and after he completed his sentence. Reimers was originally only required to register for two years following discharge from the Department of Corrections sex offender treatment program. After the amendments, he was given a sex offender level assignment and required to register for 15 years following the completion of his sentence.[17] The Court of Civil Appeals found the amendments were substantive because they would increase the length of Reimers' registration period beyond that required of him when he was sentenced.[18] The appellate court determined substantive changes to the law could not be applied retroactively without express legislative intent.[19] The court did not find a clear legislative intent to apply the laws retroactively and therefore held the amendments did not apply to Reimers. The violation of the ex post facto clause was not addressed because the law would have to have been applied retroactively first before there could be an ex post facto violation.

¶ 13 Starkey argues based upon *State v. Timothy Lynn Smith* and *Reimers v. State* the law requires a person to register based upon the law at the time of sentencing. He contends when he was sentenced the law did not require a person with a deferred adjudication to register and therefore he should be relieved of any further obligation to register. The Department contends Starkey's level assignment is based on "only one criteria-the crime for which one was convicted" and he is not entitled to a reduction of his level. Their argument is essentially no other criteria are necessary in the level assignment and therefore there is no basis for a court to make a level assignment modification.

¶ 14 The Department additionally asserts the assignment of a level to Starkey without a hearing did not violate procedural due process. They cite the United States Supreme Court decision in *Connecticut Dep't of Public Safety v. Doe,* 538 U.S. 1, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003). In *Connecticut* the Unit-

ed States Supreme Court held the Federal Due Process Clause did not entitle sex offenders to a hearing to determine whether they were currently dangerous before their inclusion in a publicly disseminated sex offender registry. *Connecticut* 538 U.S. at 7–8, 123 S.Ct. 1160. Inclusion in the registry was based on the conviction alone and not on a determination as to the offender's dangerousness. *Id.* at 7, 123 S.Ct. 1160. The Court found a person who asserts a right to a hearing under the Federal Due Process Clause must show the facts they seek to establish in that hearing are relevant under the statutory scheme. *Id.* at 8, 123 S.Ct. 1160. Because the fact the sex offender seeks to prove-he is not currently dangerous-is of no consequence under the law, no hearing was necessary. *Id.* at 7, 123 S.Ct. 1160. Further, the court determined procedural protections had already been received at the time of his trial. *Id.*

¶ 15 The Department next asserts a retroactive application of SORA does not violate the prohibition on ex post facto laws found in the Oklahoma and Federal Constitutions. They rely on *Smith v. Doe,* 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003), the United States Supreme Court seminal case concerning ex post facto challenges to retroactive sex offender registration laws. In *Smith,* the United States Supreme Court utilized various factors to determine whether the Alaska Sex Offender Registration Act (ASORA) violated the Ex Post Facto Clause of Article 1, § 10 of the United States Constitution. First, the Supreme Court determined whether or not the legislature intended ASORA to be punishment. It found the intent was to create a "civil, nonpunitive regime."[20] Second, the court reviewed the effects of ASORA's provisions to determine, regardless of intent, whether the effects were so punitive to negate that intent. The Court determined the effects did not negate its civil regulatory scheme and therefore did not violate the Ex Post Facto Clause.[21]

---

**17.** Title 57 O.S. Supp.2007, § 583.

**18.** *Reimers* at ¶ 32.

**19.** *Reimers* at ¶ 30.

**20.** *Smith v. Doe,* 538 U.S. at 96, 123 S.Ct. 1140.

**21.** *Id.* at 105, 123 S.Ct. 1140.

¶ 16 On May 10, 2011, the trial court entered its Order granting summary judgment in favor of Starkey. The trial court found at the time Starkey received his deferred sentence SORA's registration requirement was for 10 years. The trial court determined Starkey should have been removed from the sex offender registry sometime in 2008. The trial court noted the Oklahoma Court of Civil Appeals in *Freeman v. Henry*, 2010 OK CIV APP 134, 245 P.3d 1258, found the retroactive application of SORA to an offender convicted prior to its enactment was acceptable. The trial court, however, did not adopt the logic in *Freeman v. Henry*. The trial court ruled SORA was not to be retroactively applied to Starkey, specifically finding the applicable law was the version in existence at the time Starkey pled nolo contendere to the charge of sexual assault of a minor child on October 12, 1998, in Calhoun County, Texas.

## STANDARD OF REVIEW

¶ 17 An appeal on summary judgment comes to this Court as a de novo review. *Carmichael v. Beller*, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. On appeal, this Court assumes "plenary independent and non-deferential authority to reexamine a trial court's legal rulings." *Kluver v. Weatherford Hospital Auth.*, 1993 OK 85, ¶ 14, 859 P.2d 1081, 1084. The issues involve a question of law which we review de novo. *In re Estate of Bell–Levine*, 2012 OK 112, ¶ 5, 293 P.3d 964, 966.

## ANALYSIS

¶ 18 The Department asserts on appeal it is obvious the legislature meant the applicable amendments to SORA be applied retroactively. It requests this Court issue a published opinion establishing binding precedent that SORA is to be given retroactive effect and such an application does not violate due process or the prohibition on ex post facto laws. Starkey requests this Court find SORA should be interpreted and applied prospectively only. He also asks, while he believes it is not required, this Court additionally find the retroactive application of SORA's provisions violates the ex post facto clause.

## I. Retroactivity of SORA Provisions

¶ 19 First, we must determine whether or not the level assignment system created in 2007, as amended, was intended to be applied retroactively. If we find it was intended to be applied retroactively, then we must determine whether its retroactive application violates the ex post facto clause. Second, if we find the level assignment system was not intended to be applied retroactively, we must then determine Starkey's correct period of registration. The trial court found the law at the time Starkey was sentenced only required him to register for 10 years. The Department asserts Starkey was initially required to register for 10 years "following completion of his probation." This would be 10 years following the 10 years of community supervision which was a condition of Starkey's deferred adjudication.

¶ 20 SORA was created in 1989 and has been amended in almost every year since. Amendments enacted which increased the duties and obligations of a sex offender, including increasing the registration period, are substantive amendments and not merely procedural remedial amendments.[22] The Department disagrees with the logic in *Reimers v. State ex rel. Dept. of Corrections*, 2011 OK CIV APP 83, 257 P.3d 416 and *State of Oklahoma v. Timothy Lynn Smith*, S–2009–944, filed October 28, 2010, which determined a "clear expression" from the legislature is necessary before a substantive change may be made retroactive. They assert the legislative intent need only be "necessarily implied" and no "clear expression" is required, relying on *Wickham v. Gulf Oil Corp.* 1981 OK 8, 623 P.2d 613 and *Good v. Keel*, 1911 OK 264, 29 Okla. 325, 116 P. 777.

¶ 21 The *Wickham* Court found as a rule of statutory construction, statutes are generally presumed to operate prospectively. *Wickham*, 1981 OK 8 at ¶ 13, 623 P.2d 613.

---

**22.** Substantive law is the part of the law that creates rights, duties and obligations. *See Mid–America Corp. v. Miller*, 1962 OK 123, 372 P.2d

14 and *Williams v. State*, 297 Ga.App. 626, 677 S.E.2d 773 (2009).

However, "this presumption does not defy rebuttal if the purposes and intention of the Legislature to give a statute a retrospective effect are expressly declared or are necessarily implied from the language used." *Id.* In its analysis the Court reviewed other jurisdictions which found as follows:

[w]ords alone, however, are not the only decisive factor in resolving the issue since "(i)t is not necessary that a statute expressly state that it is intended to operate retrospectively if such an intention can be obtained by viewing its purpose and the method of its enactment."

The presumption against retroactive application has been subordinated "to the transcendent canon of statutory construction that the design of the Legislature be given effect."

*Id.* (internal citations omitted).

¶ 22 *Wickham* was summarized four years later in the case of *In re Bomgardner*, 1985 OK 59, 711 P.2d 92. In *Bomgardner*, this Court stated:

In short, where the legislature has not explicitly set forth what it intended, the presumption against retroactivity should not be followed in complete disregard of factors that may give a clue to the legislative intent. Only if we were to fail in

detecting legislative intent after looking at all the available indicia, would the presumption of prospectivity operate.

*In re Bomgardner*, 1985 OK 59 at ¶ 10, 711 P.2d 92.

¶ 23 *Wickham* ultimately found "the legislative intent was neither expressly declared nor necessarily ascertainable, and in the absence of a clear expression by the Legislature that the ... amendment was to operate retrospectively," the presumption against retrospective application takes great weight. *Wickham*, 1981 OK 8 at ¶ 14, 623 P.2d 613.

¶ 24 The seminal Oklahoma case on the "necessarily implied" language cited by the Department, is the 1911 case of *Good v. Keel*, 1911 OK 264, 29 Okla. 325, 116 P. 777. In *Good*, this Court held "[i]t is a rule of statutory construction that all statutes are to be construed as having a prospective operation unless the purposes and intention of the Legislature to give them a retrospective effect is expressly declared, or is **necessarily implied** from the language used." *Good*, 1911 OK 264 at ¶ 4, 116 P. 777. In a majority of opinions since *Good* where this Court has looked at the "necessarily implied" language we have found no retroactive application was intended.[23]

**23.** *Multiple Injury Trust Fund v. Pullum*, 2001 OK 115, 37 P.3d 899; *Barnhill v. Multiple Injury Trust Fund*, 2001 OK 114, 37 P.3d 890; *Autry v. Multiple Injury Trust Fund*, 2001 OK 79, 38 P.3d 213; *Walls v. American Tobacco Co.*, 2000 OK 66, 11 P.3d 626; *Fraternal Order of Police Lodge No. 165 v. City of Choctaw*, 1996 OK 78, 933 P.2d 261; *Department of Human Services ex rel. Pavlovich v. Pavlovich*, 1996 OK 71, 932 P.2d 1080; *Houck v. Hold Oil Corp.*, 1993 OK 166, 867 P.2d 451; *Kluver v. Weatherford Hosp. Authority*, 1993 OK 85, 859 P.2d 1081; *Seal v. Corporation Com'n*, 1986 OK 34, 725 P.2d 278; *Holdsworth v. Holdsworth*, 1986 OK 29, 720 P.2d 326, *overruled* by *Nantz v. Nantz*, 1988 OK 9, 749 P.2d 1137, which found retroactive application of amendments could be made because the right they dealt with was not vested; *Timmons v. Royal Globe Ins. Co.*, 1985 OK 76, 713 P.2d 589; *Smith v. Smith*, 1982 OK 115, 652 P.2d 297 *also overruled* by *Nantz v. Nantz*, 1988 OK 9, 749 P.2d 1137, which found retroactive application of amendments could be made because the right they dealt with was not vested; *Wickham v. Gulf Oil Corp.*, 1981 OK 8, 623 P.2d 613; *MFA Ins. Co. v. Hankins*, 1980 OK 66, 610 P.2d 785; *State ex rel. State Bd. Of Registration for Professional Engineers and Land Surveyors v. Engineered Coatings,*

*Inc.*, 1975 OK 149, 542 P.2d 508; *Mid–Continent Cas. Co. v. P & H Supply, Inc.*, 1971 OK 135, 490 P.2d 1358; *Sunray DX Oil Co. v. Great Lakes Carbon Corp.*, 1970 OK 149, 476 P.2d 329; *Wilbanks v. Wilbanks*, 1968 OK 56, 441 P.2d 967; *State v. Bailey*, 1956 OK 338, 305 P.2d 548; *Phillips v. H.A. Marr Grocery Co.*, 1956 OK 104, 295 P.2d 765; *State ex rel. Allen v. Board of Ed. of Independent School Dist. No. 74 of Muskogee County*, 1952 OK 241, 206 Okla. 699, 246 P.2d 368; *Board of Trustees of Firemen's Relief and Pension Fund of City of Tulsa v. Naughton*, 1946 OK 273, 197 Okla. 592, 173 P.2d 425; *Lincoln Nat. Life Ins. Co. v. Read*, 1944 OK 317, 194 Okla. 542, 156 P.2d 368; *State v. Ward*, 1941 OK 343, 189 Okla. 532, 118 P.2d 216; *Baker v. Tulsa Bldg. & Loan Ass'n*, 1936 OK 568, 179 Okla. 432, 66 P.2d 45; *Washabaugh v. Bartlett Collins Glass Co.*, 1936 OK 294, 177 Okla. 159, 57 P.2d 1162; *Swatek Const. Co. v. Williams*, 1935 OK 1139, 177 Okla. 305, 58 P.2d 585; *Franklin v. Sovereign Camp, W.O.W.*, 1930 OK 195, 145 Okla. 159, 291 P. 513; *Board of Equalization of Muskogee County v. Exchange Nat. Bank of Muskogee*, 1924 OK 1001, 104 Okla. 93, 230 P. 728; *Roe v. Burt*, 1917 OK 390, 66 Okla. 193, 168 P. 405; *Crump v. Guyer*, 1916 OK 254, 60 Okla. 222, 157 P. 321; *Casey v. Bingham*, 1913 OK 321, 37 Okla. 484,

¶ 25 This same Court found two months prior to *Good* the following:

> [l]aws are generally construed as applicable to future conditions, and are not to be allowed a retroactive effect unless such intention upon the part of the Legislature is so clearly expressed that no other construction can be fairly given. In *Lawrence v. City of Louisville*, 96 Ky. 595, 29 S.W. 450, 27 L.R.A. 560, 49 Am. St. Rep. 309, the syllabus says: 'While retrospective legislation may, in some cases, be upheld, the words of a statute ought not to have a retrospective operation unless they are so clear and imperative that no other meaning can be annexed to them, or unless the intention of the Legislature cannot be otherwise satisfied.'

*Adair v. McFarlin*, 1911 OK 129, ¶ 5, 115 P. 787, 788.

¶ 26 Two years later, this Court quoted *Clapp v. Otoe County, Neb.*, 104 F. 473, 475 (8th Cir.1900) as persuasive language in determining a statute was not meant to be applied retroactively:

> The function of the Legislature is to prescribe rules to operate upon the actions and rights of citizens in the future. While, in the absence of a constitutional inhibition, the Legislature may give to some of its acts a retrospective operation, the intention to do so must be clearly expressed, or necessarily implied from what is expressed;

*Casey v. Bingham*, 1913 OK 321, ¶ 4, 37 Okla. 484, 132 P. 663, 665.

■ ¶ 27 *Casey* also found "[i]t is a rule of construction that statutes will not be given a retroactive effect if any other reasonable construction is possible. (citing) *Good v. Keel*, 29 Okla. 325, 116 P. 777." *Casey* at ¶ 4. Additionally, "[i]n every case of doubt the doubt must be resolved against the retrospective effect." *Good*, 1911 OK 264 at ¶ 4, 116 P. 777 (Emphasis added.) (*See also Barnhill v. Multiple Injury Trust Fund*, 2001 OK 114, 37 P.3d 890; *Crawford v. Guardian Life Ins.*

132 P. 663; and *St. Louis & S.F.R. Co. v. Thompson*, 1912 OK 818, 35 Okla. 138, 128 P. 685.

24. Title 57 O.S. Supp.2007, §§ 582.1–582.5; 2007 Okla. Sess. Laws c. 261, §§ 23–26.

*Co.*, 1997 OK 10, ¶ 8, 954 P.2d 1235, 1238; and *Phillips v. H.A. Marr Grocery Company*, 1956 OK 104, 295 P.2d 765).

## II. Applicability of the Level Assignment Amendments to Starkey

■ ¶ 28 In 2007, HB 1760 created a system to assign sex offenders a level of 1 to 3 based upon their risk.[24] The law became effective on November 1, 2007. Starkey was informed in 2008 by the Department of Corrections, without any hearing or opportunity to be heard, that he was assigned a level of 3 and his registration period would be increased to life. The issue to be determined is whether the Legislature intended the new level system to be applied retroactively to persons who were already subject to the provisions of SORA. We find it was **not** intended to apply retroactively but is to be applied prospectively. We also find the Department, regardless of the legislative intent, has applied the level assignments retroactively and, pursuant to our analysis *infra*, such application violates the ex post facto clause of the Oklahoma Constitution.[25]

¶ 29 The 2007 amendments used specific language in sections 582.1 and 582.2 of title 57 of the Oklahoma Statutes which indicate a prospective intent. This language is essentially the same today. These sections apply the level assignments to a person "who **will be** subject to the provisions of the Sex Offenders Registration Act." The language is as follows:

> Before a person, **who will be subject to the provisions of the Sex Offenders Registration Act, is due to be released** from a correctional institution, the Department of Corrections shall determine the level of risk of the person to the community using the sex offender screening tool developed or selected pursuant to Section 26 of this act, and assign to the person a numeric risk level of one, two, or three. (Emphasis added.)

Title 57 O.S. Supp.2007, § 582.1

25. Okla. Const. art. 2, § 15.

A. No less than seven (7) days prior to the date on which a person, **who will be subject to the provisions of the Sex Offenders Registration Act, is to be released** from a correctional institution, the person in charge of the correctional institution shall forward the registration information, as provided in subsection A of Section 585 of Title 57 of the Oklahoma Statutes, and numeric risk level to the Department of Corrections and to:

1. The local law enforcement authority in the municipality or county in which the person expects to reside, if the person expects to reside within this state; or

2. The local law enforcement authority that is identified by the correctional institution as the agency designated by another state to receive registration information, if the person expects to reside in that other state and that other state has a registration requirement for sex offenders.

B. If a person, **who will be subject to the provisions of the Sex Offenders Registration Act,** received a suspended sentence or any probationary term, including a deferred sentence imposed in violation of subsection G of Section 991a of Title 22 of the Oklahoma Statutes, the court shall, **on the day of pronouncing the judgment and sentence:**

1. Make a determination of the numeric risk level of the person using the sex offender screening tool developed or selected pursuant to Section 26 of this act;

2. Assign to the person a numeric risk level of one, two, or three; and

3. Notify the person of the obligation to register as a sex offender as provided for in Section 585 of Title 57 of the Oklahoma Statutes. (Emphasis added.)

Title 57 O.S Supp.2007, § 582.2

¶ 30 HB 1760 made no provision to include persons who "enter the state" within the level assignment system. Six months after the effective date, the Legislature passed an emergency measure to include such persons.[26] This amendment provides as follows:

F. Upon receiving registration information from a local law enforcement agency of a person who has entered this state and who has registered as a sex offender, as required in Section 583 of this title, the risk assessment review committee shall review the registration information and make a determination of the numeric risk level of the person using the sex offender screening tool. The risk assessment review committee shall provide written notification to the person and the local law enforcement agency of the numeric risk level that has been assigned to the person.

Title 57 O.S. Supp.2008, § 582.5(F); 2008 Okla. Sess. Laws c. 94, § 1.

██ ¶ 31 In determining legislative intent, "the court may look to each part of the statute, to other statutes upon the same or relative subjects, to the old law upon the subject, to the evils and mischiefs to be remedied, and to the natural or absurd consequences of any particular interpretation." *Blevins v. W.A. Graham Co.,* 1919 OK 147, 72 Okla. 308, 182 P. 247. We see no intent to treat this amendment any differently than the provisions in § 582.1 and § 582.2 which show a prospective intent.

¶ 32 The 2008 amendments also amended subsection B of § 583.[27] This amendment provides "local law enforcement authority shall forward the registration information to the risk assessment review committee of the Department of Corrections." Even though this language was added to subsection B of § 583 which applies to persons who enter the state "on or after November 1, 1989," the very language of the 2007 amendments creating the level assignment system clearly show a prospective intent. The 2007 scheme in 582.1 and 582.2 which indicate it is prospective would logically carry to the 2008 amendments making the level system applicable to persons entering Oklahoma. Further, any doubt must be resolved against a retroactive application. *Good v. Keel,* 1911 OK 264, ¶ 4, 29 Okla. 325, 116 P. 777.

---

**26.** 2008 Okla. Sess. Laws c. 94, § 1 (emergency clause only; approved by the Governor on April 29, 2008).

**27.** 2008 Okla. Sess. Laws c. 94, § 2.

### III. Applicability of SORA Amendments to Starkey Prior to the Enactment of the Level Assignment System

¶ 33 The law in effect throughout 1998 stated "[t]he registration with the Department of Corrections required by this section shall be maintained by the Department of Corrections for a period of ten (10) years from the date of registration." Title 57 O.S. Supp.1997, § 583(C). Section 583 was once again amended in 2004 to require registration to be 10 years "from the date of completion of the sentence." 2004 Okla. Sess. Laws. c. 162, § 1. This version defines, in a new subsection F (currently subsection G), the "date of the completion of the sentence" as "the day an offender completes all incarceration, probation and parole pertaining to the sentence." Since Starkey's deferred adjudication required him to successfully complete 10 years of community supervision, this amendment, if applied retroactively, essentially doubled his registration period. This amendment therefore extends Starkey's registration period, which should have ended in 2008, to 2018. The 2004, non-amended language in § 583(B) stated as follows:

B. Any person who has been convicted of an offense or received a deferred judgment for an offense on or after November 1, 1989, in another jurisdiction, which offense if committed or attempted in this state, would have been punishable as one or more of the offenses listed in Section 582 of this title and who enters this state shall be registered as follows:

Subsections C and D then provided the new (underlined) amended language as follows:

C. Except for habitual or aggravated sex offenders, the person shall be required to register for a period of ten (10) years from the date of the completion of the sentence and the information received pursuant to the registration with the Department of Corrections required by this section shall be maintained by the Department of Corrections for at least ten (10) years from the date of the last registration.

D. Except for habitual or aggravated sex offenders, the person shall be required to register for a period of ten (10) years from the date of completion of the sentence and the information received pursuant to the registration with the local law enforcement authority required by this section shall be maintained by such authority for at least ten (10) years from the date of the last registration

2004 Okla. Sess. Laws. c. 162, § 1.

¶ 34 The primary goal of statutory construction is to ascertain and follow the intention of the Legislature.[28] Here we think the legislative intent was necessarily implied. The Legislature must have known or it can be inferred that amending the registration periods in subsections C and D would affect those persons required to register in subsection B; namely, persons who have been convicted of an offense or received a deferred judgment for an offense on or after November 1, 1989. This is a different situation than in the previous discussion where there was specific language indicating a prospective application.[29] We find the 2004 amendment to § 583 was intended to apply retroactively.

### IV. The Constitutional Prohibition on Ex Post Facto Laws

¶ 35 The Department raised for the first time in its response and motion for summary judgment the retroactive application of SORA does not violate the prohibition on ex post facto laws. In Starkey's Response to Defendants' Motion for Summary Judgment he asserted he never raised the issue of an ex post facto violation. The trial court's order did not address whether the ex post facto clause had been violated in this case. Starkey asserts on appeal if this Court should find SORA applies retroactively then we should also find that it violates the ex post facto clause. The Department encourages this Court to issue a "clear decision of binding precedent" essentially upon whether the retroactive application of SORA's provi-

---

28. *Autry v. Multiple Injury Trust Fund,* 2001 OK 79, ¶ 12, 38 P.3d 213, 217.

29. *See* discussion *supra* ¶¶ 28–32.

sions is prohibited by the ex post facto clause.

¶ 36 We find there is a strong public interest in protecting the public from ex post facto laws. We have previously found that a public law issue may be considered on appeal upon a theory not presented to the trial court.[30] The retroactive extension of SORA's obligations is the primary issue. Because the Department applies the level assignments retroactively and because we have found the legislative intent was to apply the 2004 amendments to § 583 retroactively, it is incumbent to address whether or not these extensions violate the prohibition on ex post facto laws.

 ¶ 37 Article 2, section 15, of the Oklahoma Constitution, like Article I, Section 9, Clause 3 and Section 10, Clause 1 of the United States Constitution, provides "[n]o ... ex post facto law ... shall ever be passed." An ex post facto law is "[a] law passed after the occurrence of a fact or commission of an act, which retrospectively changes the legal consequences or relations of such fact or deed."[31] The United States Supreme Court in interpreting the United States Constitution's Ex Post Facto Clause has said:

> laws, whatever their form, which purport to make innocent acts criminal after the event, or to aggravate an offense, are harsh and oppressive, and that the criminal quality attributable to an act, either by the legal definition of the offense or by the nature or amount of the punishment imposed for its commission, should not be altered by legislative enactment, after the fact, to the disadvantage of the accused.

*Beazell v. Ohio,* 269 U.S. 167, 170, 46 S.Ct. 68, 70 L.Ed. 216 (1925).

> The *Beazell* formulation is faithful to our best knowledge of the original understanding of the *Ex Post Facto* Clause: Legislatures may not retroactively alter

the definition of crimes or increase the punishment for criminal acts.

*Collins v. Youngblood,* 497 U.S. 37, 43, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990).

The prohibition on ex post facto laws bars a legislature from enacting "any statute which punishes as a crime an act previously committed, which was innocent when done, which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed...." *Beazell* at 169, 46 S.Ct. 68; *See also Dobbert v. Florida,* 432 U.S. 282, 292, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977). The Oklahoma Court of Criminal Appeals has a similar interpretation. In *Spitznas v. State,* 1982 OK CR 115, ¶ 16, 648 P.2d 1271, 1275–1276, it found as follows:

> There is no concrete definition as to "what alterations of procedure will be held to be of sufficient moment to transgress the constitutional prohibition ..." rather, "(t)he distinction is one of degree." *Beazell,* supra, at 269 U.S. at 171, 46 S.Ct. at 69, 70 L.Ed. at 218. It has been the rule in Oklahoma that a law is within the protection of the provision "when it inflicts a greater punishment than the law annexed to the crime at (the) time it was committed or alters (the) situation of accused to his disadvantage." *Maghe v. State,* 429 P.2d 535, 540 (Okl.Cr.1967) (citing *People v. Ward,* 50 Cal.2d 702, 328 P.2d 777, 76 A.L.R.2d 911 (1958)).

*Spitznas v. State,* 1982 OK CR 115, ¶ 16, 648 P.2d 1271, 1275–1276.

¶ 38 The framers of the Federal Constitution included the Ex Post Facto Clause in the body of the Constitution adopted in 1787 rather than deferring it to the amendment process.[32] In doing so it is evident the framers viewed the ban on ex post facto laws as fundamental to the protection of individual

---

30. *Davis v. GHS Health Maint. Org., Inc.,* 2001 OK 3, ¶ 25, 22 P.3d 1204, 1212. *See also Simons v. Brashears Transfer & Storage,* 1959 OK 156, ¶ 24, 344 P.2d 1107, 1113, where this Court held "[w]e have held numerous times that we would not consider constitutional questions not raised in the trial court unless the public interest and welfare so requires."

31. Black's Law Dictionary 662 (4th ed. 1968).

32. *See State v. Letalien,* 2009 ME 130, ¶ 23, 985 A.2d 4, 13.

liberty.[33] Chief Justice John Marshal rationalized the framer's intent behind the constitutional protections against bills of attainder, ex post facto laws and laws impairing the obligations of contracts in *Fletcher v. Peck*, 10 U.S (6 Cranch) 87, 137–38, 3 L.Ed. 162 (1810). He wrote:

> Whatever respect might have been felt for the state sovereignties, it is not to be disguised that the framers of the constitution viewed, with some apprehension, the violent acts which might grow out of the feelings of the moment; and that the people of the United States, in adopting that instrument, have manifested a determination to shield themselves and their property from the effects of those sudden and strong passions to which men are exposed. The restrictions on the legislative power of the states are obviously founded in this sentiment;
>
> *Fletcher v. Peck*, 10 U.S (6 Cranch) 87, 137–38, 3 L.Ed. 162 (1810).

In *Landgraf v. USI Film Products*, 511 U.S. 244, 266, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), Justice Stevens wrote that these constitutional protections:

> demonstrate that retroactive statutes raise particular concerns. The Legislature's unmatched powers allow it to sweep away settled expectations suddenly and without individualized consideration. Its responsivity to political pressures poses a risk that it may be tempted to use retroactive legislation as a means of retribution against unpopular groups or individuals.

He also mentioned Justice Marshall's observation that "the *Ex Post Facto* Clause not only ensures that individuals have 'fair warning' about the effect of criminal statutes, but also 'restricts governmental power by restraining arbitrary and potentially vindictive legislation.'" *Id.* at 266–67, 114 S.Ct. 1483 (quoting *Weaver v. Graham*, 450 U.S. 24, 28–29, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981)).

¶ 39 The ex post facto prohibition only applies to penal laws and therefore, the question is whether the provisions of SORA are punitive or are they merely regulatory.[34]

¶ 40 The Department asserts SORA has already been found to be a civil regulatory scheme by the Oklahoma Court of Civil Appeals and thus held it did not violate either the Oklahoma or United States Constitutions. *Freeman v. Henry*, 2010 OK CIV APP 134, ¶ 11, 245 P.3d 1258, 1260. *Freeman* relied upon a 10th Circuit Court of Appeals decision, *U.S. v. Hinckley*, 550 F.3d 926, 937 (10th Cir.2008), which in turn relied partly on *Smith v. Doe*, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003). Although Freeman addresses SORA, neither of the cases it relied upon made a determination about Oklahoma's law or Constitution. *Hinckley* dealt with the federal Sex Offender Registration and Notification Act, 42 U.S.C. § 16901 *et seq.* (SORNA) and *Smith* concerned the Alaska Sex Offender Registration Act and found it did not violate the Ex Post Facto Clause of the United States Constitution. *Freeman*, however, provides little analysis to support its conclusion. Nor does it mention the Alaska Supreme Court's ruling subsequent to *Smith* which held ASORA did violate the Alaska Constitution's ex post facto clause. *Doe v. State*, 189 P.3d 999 (Alaska 2008).

¶ 41 We find the analytical framework used in *Smith v. Doe* and later in *Doe v. State* to determine if a sex offender registry scheme was penal rather than civil to be appropriate. This framework is derived from *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). It has also been labeled the "intent-effects" test.[35] In order to apply this framework, we first must ask whether there was legislative intent to make SORA and/or its amendments punitive. Did the legislature indicate a preference either expressly or impliedly for a civil label or a criminal label? [36] Further, simply labeling a law as procedural, however, does not immunize it from scrutiny

---

**33.** *Id.*

**34.** *Collins v. Youngblood*, 497 U.S. 37, 41, 110 S.Ct. 2715, 2718–19, 111 L.Ed.2d 30 (1990).

**35.** *Russell v. Gregoire*, 124 F.3d 1079, 1084 (9th Cir.1997).

**36.** *U.S. v. Ward*, 448 U.S. 242, 248, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980).

under the Ex Post Facto Clause. *Collins v. Youngblood,* 497 U.S. 37, 46, 110 S.Ct. 2715, 2721, 111 L.Ed.2d 30 (1990). A subtle ex post facto violation is no more permissible than an overt one. *Id.* If the legislature intended to impose a punishment then our inquiry is over.[37] However, if we conclude the legislature intended a non-punitive regulatory scheme then we must determine whether the scheme is so punitive either in purpose or effect as to negate that intent.[38]

¶ 42 In 1997, the legislature amended § 581 of SORA by adding a findings subsection. In subsection B it states:

> The Legislature finds that sex offenders who commit other predatory acts against children and persons who prey on others as a result of mental illness pose a high risk of re-offending after release from custody. The Legislature further finds that the privacy interest of persons adjudicated guilty of these crimes is less important than the state's interest in public safety. The Legislature additionally finds that a system of registration will permit law enforcement officials to identify and alert the public when necessary for protecting the public safety.
>
> 1997 Okla. Sess. Laws c. 260, § 2 (eff. Nov. 1, 1997).

¶ 43 The legislative purpose appears to be the creation of a system to help prevent sex offenders from re-offending by permitting law enforcement to identify sex offenders and alert the public of such sex offenders when necessary. The stated intent seems to apply to sex offenders who commit "other predatory acts against children" and persons who prey on others because of "mental illness." The provisions of SORA, however, are not just geared towards repeat sex offenders or offenders with mental illness. SORA also applies to first time offenders and persons who have not been determined to suffer from a mental illness. This subsection is the only overt attempt to establish a purpose for SORA and has not been amended since its creation in 1997. This subsection does not expressly designate SORA's requirements as "civil". Justice Souter noted in his concurring opinion in *Smith* that other United States Supreme Court cases relied heavily on the legislature's stated label in finding a civil intent.[39] Although there is evidence pointing to a civil intent, there is considerable evidence of a punitive effect. Even if we assume the act as amended was intended to be a civil regulatory scheme that fact does not dispose of the issue. The second part of the test, whether SORA's effects are punitive, is dispositive.

¶ 44 In *Smith v. Doe,* 538 U.S. 84, 92, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003), the Supreme Court found "that 'only the clearest proof' that a law is punitive based on substantial factors will be able to overcome the legislative categorization." In his concurring opinion Justice Souter stated the standard of "clearest proof" made sense "only when the evidence of legislative intent clearly points in the civil direction."[40] He believed there was considerable evidence that the act in *Smith* had criminal characterizations as well as civil.[41] Justice Ginsburg also stated in her dissent that she would not demand "the clearest proof" be used to determine if a statute is in effect criminal rather than civil.[42] In her opinion, *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963) guides one to use a neutral evaluation of the act's purpose and effects.[43] As stated, there is no clear legislative categorization that SORA is a civil law. In Oklahoma legislative enactments are presumed constitutional.[44] Where feasible this Court will construe statutes in a manner to

---

**37.** *Smith v. Doe,* 538 U.S. 84, 92–93, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003).

**38.** *Id.* at 92, 123 S.Ct. 1140.

**39.** *Id.* at 107–108, 123 S.Ct. 1140 (Souter, J., concurring in the judgment).

**40.** *Smith v. Doe,* 538 U.S. 84, 107, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) (Souter, J., concurring in the judgment).

**41.** *Id.*

**42.** *Id.* at 115 (Ginsburg, J., dissenting).

**43.** *Id.*

**44.** *In re Estate of Bell–Levine,* 2012 OK 112, ¶ 9, 293 P.3d 964, 967.

uphold their constitutionality.[45] The constitutionality of a statute will be upheld unless it is clearly inconsistent with the constitution.[46] The factors in the second part of the inquiry will help determine SORA's nature and provide a neutral framework for determining SORA's purpose and effects.

¶ 45 *Smith* dealt with an interpretation of the Federal Constitution's prohibition on ex post facto laws. Although Oklahoma's ex post facto clause is nearly identical to the Federal Constitution's provisions we are not limited in our interpretation of Oklahoma's constitution.[47] How we apply the "intent-effects" test is not governed by how the federal courts have independently applied the same test under the United States Constitution as long as our interpretation is at least as protective as the federal interpretation.[48] This Court has previously held:

> The people of this state are governed by the Oklahoma Constitution, and when it grants a right or provides a principle of law or procedure beyond the protections supplied by the federal constitution, it is the final authority. This is so even if the state constitutional provision is similar to the federal constitution. The United States Constitution provides a floor of constitutional rights-state constitutions provide the ceiling.

*Daffin v. State,* 2011 OK 22, n. 20, 251 P.3d 741, n. 20 (citing *Alva State Bank & Trust Co. v. Dayton,* 1988 OK 44, 755 P.2d 635) (Kauger, J., specially concurring).

■ ¶ 46 The second part of the inquiry utilizes the seven *Mendoza–Martinez* factors in order to determine whether the effects of the law are punitive. These factors, although not exhaustive, are useful in determining whether the overall effects of a statute are so punitive as to negate any civil regulatory

intent. This involves the weighing of relatively subjective factors. Courts have emphasized certain factors over others at various times and there is no precise formula to their application.[49] These factors are as follows:

(1) "[w]hether the sanction involves an affirmative disability or restraint";

(2) "whether it has historically been regarded as a punishment";

(3) "whether it comes into play only on a finding of scienter";

(4) "whether its operation will promote the traditional aims of punishment—retribution and deterrence";

(5) "whether the behavior to which it applies is already a crime";

(6) "whether an alternative purpose to which it may rationally be connected is assignable for it"; and

(7) "whether it appears excessive in relation to the alternative purpose assigned."

*Doe v. State,* 189 P.3d 999, 1008 (Alaska 2008) (quoting, *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963)).

### 1. Affirmative disability or restraint

■ ¶ 47 We apply the first *Mendoza–Martinez* factor to determine whether SORA involves an affirmative disability or restraint. The United States Supreme Court said in *Smith v. Doe,* 538 U.S. 84, 99–100, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) "[h]ere, we inquire how the effects of the Act are felt by those subject to it. If the disability or restraint is minor and indirect, its effects are unlikely to be punitive." The Court found ASORA did not impose a disability.[50] It determined the Ninth Circuit Court of Appeals was in error when it found a disability

---

**45.** *Id.*

**46.** *Jacobs Ranch, L.L.C. v. Smith,* 2006 OK 34, ¶ 18, 148 P.3d 842, 848.

**47.** *See Messenger v. Messenger,* 1992 OK 27, ¶ 17, 827 P.2d 865, 872. This Court used a similar analysis when discussing the due process clause in the Oklahoma Constitution.

**48.** *Id.;* the Supreme Court of Alaska held similarly in *Doe v. State,* 189 P.3d 999, 1005 (Alaska 2008) (finding it has never indicated "that feder-

al interpretation of the federal ex post facto prohibition prevents us from reaching a different, and more protective, result under the Alaska Constitution.'").

**49.** *State v. Letalien,* 2009 ME 130, ¶ 32, 985 A.2d 4, 17.

**50.** *Smith* at 101, 123 S.Ct. 1140.

arose from the "in-person" registry requirement.[51] It emphasized the fact that there was actually no "in-person" appearance requirements imposed upon any sex offender subject to ASORA.[52] The Supreme Court also said "[b]y contrast offenders subject to the Alaska statute are free to move where they wish and to live and work as other citizens, with no supervision."[53]

¶ 48 As Starkey points out, Oklahoma's SORA is very different from the ASORA reviewed by the United States Supreme Court. Under § 583 of SORA a person is required to register "in person" with the Department of Corrections within 3 business days of conviction if not incarcerated and 3 days prior to release from an institution.[54] It requires "in person" registration with any local law enforcement authority of an area where such person intends to reside for 7 consecutive days or longer.[55] It further requires "in person" registration with the Department of Corrections and local law enforcement no less than 3 business days prior to abandoning or moving from their registered address.[56] For persons who enter the state, they are required to register "in person" with the Department of Corrections and local law enforcement if they intend to be in the state for any purpose for 5 consecutive days or longer, has any type of employment with or without compensation for more than 5 cumulative days in any 60–day period or is enrolled as a student within this state.[57] It also requires "in person" registration with

the Department of Corrections and local law enforcement within 3 business days of changing or terminating employment or changing enrollment status as a student.[58] Further, a person subject to the act shall verify their address "in person" annually for a level one designation, semi-annually for a level two designation and every 90 days for a habitual or aggravated sex offender and those receiving a level three designation.[59]

¶ 49 Although SORA poses no physical restraints on registrants the affirmative "in person" registration and verification requirements alone cannot be said to be "minor and indirect" especially when failure to comply is a felony subject to 5 years imprisonment and a fine not to exceed $5,000.[60] Other courts have found the "in person" requirements "place substantial restrictions on the movements of lifetime registrants" which can amount to an affirmative disability.[61] As the Department argues, Starkey who received a deferred adjudication and 60 days in jail in Calhoun County, Texas, would now be required to make an "in person" appearance every 90 days for life and every time he moves, changes employment, changes student status, or resides somewhere for 7 consecutive days or longer. All of this would be required under threat of prosecution. These duties are significant and intrusive. We agree with Justice Stevens' finding in his dissent in *Smith v. Doe*, that these duties imposed on offenders are similar to the treatment received by probationers subject to

51. *Smith v. Doe*, 538 U.S. 84, 101, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) (*See Doe v. Otte*, 259 F.3d 979 (9th Cir.2001), *rev'd sub nom. Smith v. Doe*, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003)).

52. *Smith* at 101, 123 S.Ct. 1140.

53. *Id.;* the Court also notes that "[t]he Act [ASORA] does not restrain activities sex offenders may pursue but leaves them free to change jobs or residences." *Id.* at 100, 123 S.Ct. 1140. It "imposes no physical restraint, and so does not resemble the punishment of imprisonment, which is the paradigmatic affirmative disability or restraint." *Id.*

54. Title 57 O.S.2011, § 583; the "in person" requirement was added by 2007 Okla. Sess. Laws c. 261, § 27 (eff. Nov. 1, 2007).

55. *Id.*

56. *Id.*

57. *Id.*

58. Title 57 O.S.2011, § 583; added by 2009 Okla. Sess. Laws c. 404, § 5 (eff. Nov. 1, 2009).

59. Title 57 O.S.2011, § 584.

60. Title 57 O.S. Supp.2011, § 587.

61. *State v. Letalien*, 2009 ME 130, ¶ 37, 985 A.2d 4, 18.

continued supervision.[62]

¶ 50 In addition to the "in person" registration and verification requirements, offenders in Oklahoma, among other things, have restrictions placed on where they can live and with whom they can live. An offender may not reside, either temporarily or permanently, within a two-thousand-foot radius of any public or private school, educational institution, property or campsite whose primary purpose is working with children, a playground or park operated or supported in whole or part by public funds, or a licensed child care center.[63] This restriction is made regardless of whether the original victim was a child or an adult. It is also unlawful for an offender to reside with minor children if their original victim was a minor child.[64] A violation is a felony punishable by one to three years in prison.[65] Further, with few exceptions, a registered sex offender shall not reside with other registered sex offenders.[66]

¶ 51 Some additional legal obligations are predicated on SORA registration. One in particular pertains to a sex offender's driver's license or identification card. A person registered under SORA must renew their driver's license or issued identification card every year as opposed to non-registrants who renew every four years.[67] Therefore registrants are required to pay four times the amount of a non-registrant.

¶ 52 SORA also requires a local law enforcement entity to make its sex offender registry available upon request.[68] The information in the registry includes the name, photograph, address, and description of the offender and the offender's crime and level designation.[69] Such information is further made available on the Department of Corrections' website.[70] If the offender is classified as habitual or aggravated, local law enforcement may proactively notify anyone it determines appropriate.[71]

¶ 53 Originally, a registrant's personal information was maintained by the Department of Corrections.[72] The statute provided that a file concerning registrant information "shall be made available to state, county and municipal law enforcement agencies."[73] The file was also not made available for public inspection and no person other than a law enforcement officer employed by a state, county or municipal law enforcement agency had access to the file.[74] In 1995, Section 584 of SORA was amended to allow local law enforcement agencies to make the registry available to schools, child care facilities, and other agencies and entities that provide services to children.[75] However, the offender's address was not provided to such entities. Section 584 was again amended in 1997 and each year thereafter through 2000 with the cumulative effect of removing any restrictions on making registry information available.[76]

¶ 54 Although some of the information, such as conviction information, may otherwise be available, the internet has increased the unrestricted dissemination of personal

---

62. *Smith v. Doe*, 538 U.S. 84, 111, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) (Stevens, J., dissenting) (stating the obligations are "comparable to the duties imposed on other convicted criminals during periods of supervised release or parole").

63. Title 57 O.S. Supp.2012, § 590.

64. *Id.* (An exception is provided for children, stepchildren and grandchildren if they were not the victim).

65. *Id.*

66. Title 57 O.S. Supp.2012, § 590.1.

67. Title 47 O.S.2011, §§ 6–105.3 and 6–115.

68. Title 57 O.S.2011, § 584(L).

69. Title 57 O.S.2011, § 584(D).

70. Oklahoma Department of Corrections, http://www.doc.state.ok.us/offenders/offenders.htm (last visited April 14, 2013).

71. Title 57 O.S.2011, § 584(N).

72. Title 57 O.S. Supp.1989, § 584(C).

73. *Id.*

74. *Id.*

75. Title 57 O.S. Supp.1995, § 584(E).

76. 1997 Okla. Sess. Laws c. 360, § 5 (eff. Nov. 1, 1997); 1998 Okla. Sess. Laws c. 347, § 2 (eff. Nov. 1, 1998); 1999 Okla. Sess. Laws c. 336, § 3 (eff. Nov. 1, 1999); and 2000 Okla. Sess. Laws c. 349, § 4 (eff. Nov. 1, 2000).

information of sex offenders. The Department's website provides the sex offender registry in a searchable format. Anyone at any time and for any reason can find the address and picture of a registered sex offender along with the statute under which the offender was convicted and the level assigned. Other relevant information concerning the facts surrounding the conviction is not provided.

¶ 55 Some courts have found such aggressive public notification of sex offender crimes "exposes sex offenders to profound humiliation and community-wide ostracism."[77] The Supreme Court of Indiana has found the effect of the public dissemination "subjects offenders to 'vigilante justice' which may include lost employment opportunities, housing discrimination, threats, and violence."[78] Justice Stevens said in his dissent in *Smith v. Doe* that Alaska's sex offender registry statutes "impose significant affirmative obligations and a severe stigma on every person to whom they apply."[79] In his concurring opinion in *Smith*, Justice Souter quoted the following from *E.B. v. Verniero*, 119 F.3d 1077, 1102 (3d Cir.1997):

> families have experienced profound humiliation and isolation as a result of the reaction of those notified. Employment and employment opportunities have been jeopardized or lost. Housing and housing opportunities have suffered a similar fate. Family and other personal relationships have been destroyed or severely strained. Retribution has been visited by private, unlawful violence and threats and, while such incidents of 'vigilante justice' are not common, they happen with sufficient frequency and publicity that registrants justifiably live in fear of them.

*Smith v. Doe*, 538 U.S. 84, 109, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) (Souter, J., concurring in the judgment).

Justice Souter further stated "there is significant evidence of onerous practical effects of being listed on a sex offender registry."[80]

¶ 56 The Alaska Supreme Court noted many articles concerning the harmful effects a registry places on an offender which are noted herein.[81]

---

77. *Wallace v. State*, 905 N.E.2d 371, 380 (Ind. 2009) (essentially quoting, without citation, Justice Ginsburg's dissent in *Smith v. Doe*, 538 U.S. 84, 115, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003)) (Ginsburg, J., dissenting).

78. *Wallace* at 380; *See also Doe v. Pataki*, 120 F.3d 1263, 1279 (2d Cir.1997) (the court found "sex offenders have suffered harm in the aftermath of public dissemination-ranging from public shunning, picketing, press vigils, ostracism, loss of employment, and eviction, to threats of violence, physical attacks, and arson.").

79. *Smith v. Doe*, 538 U.S. 84, 111, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) (Stevens, J., dissenting).

80. *Smith*, 538 U.S. at 109, 123 S.Ct. 1140 (Souter, J., concurring in the judgment).

81. *Doe v. State*, 189 P.3d 999, 1010–11, nn. 81 and 85 (Alaska 2008); Neighbor Convicted of Stalking Sex Offender, Akron Beacon Journal, Dec. 13, 2007, available at EBSCO, 2W62W62425089428 (vigilantism); John R. Ellement & Suzanne Smalley, Sex Crime Disclosure Questioned: Maine Killings Refuel Debate Over Registries, Boston Globe, Apr. 18, 2006, at A1, available at 2006 WLNR 6463014 (vigilantism); Kira Millage, Killer of 2 Sex Offenders Pleads Guilty, Bellingham Herald (Wash.), Mar. 10, 2006, at 1A, available at 2006 WLNR 5238375 (vigilantism); Carolyn Starks & Jeff Long, Abuser Killed Self, Family Says, Chicago Trib., May 27, 2005, at 1, available at 2005 WLNR 23429797 (suicide); Cara Buckley, Town Torn Over Molester's Suicide, Miami Herald, Apr. 23, 2005, at 1A, available at 2005 WLNR 23022255 (suicide); Brian MacQuarrie, Man Defends Attacks on Sex Offenders, Crusader Gets Jail Term, Boston Globe, Dec. 5, 2004, at A1, available at 2004 WLNR 13142566 (vigilantism); see also Richard Tewksbury, Collateral Consequences of Sex Offender Registration, 21 J. Contemp. Crim. Just. 67, 75 (2005) (noting that in a study of 121 registered sex offenders in Kentucky, 47 percent reported being harassed in person, 16.2 percent reported being assaulted, 28.2 percent reported receiving harassing or threatening telephone calls, and 24.8 percent reported receiving harassing or threatening mail as a result of being listed on publicly accessible registries); Alvin Malesky & Jeanmarie Keim, Mental Health Professionals' Perspectives on Sex Offender Registry Web Sites, 13 Sexual Abuse: J. Res. & Treatment 53, 59 (2001) (reporting that in a study of 133 mental health professionals who work with sex offenders, 62.9 percent of respondents believed that sex offenders listed in public sex offender registry websites will become targets of vigilantism in the community); See, e.g., Jan Hollingsworth, Protesters Hound Owner of Pet Shop, Tampa Trib., Jan. 27, 2008, available at EBSCO, 2W62W62852777149 (describing community protests that forced registered sex offender to

¶ 57 Currently, SORA provides dissemination of substantial personal information about a sex offender not otherwise readily available from a single governmental source. We do not make any determination of the constitutionality of any of the individual registration requirements but have reviewed the requirements in their totality to address the cumulative effect on the issue of the first *Mendoza–Martinez* factor and the punitive effect of the act in its totality. We find SORA's registration and notification provisions impose substantial disabilities on registrants. Therefore, we find the first *Mendoza–Martinez* factor clearly favors a punitive effect.

**2. Sanctions that have been historically considered punishment**

¶ 58 The second *Mendoza–Martinez* factor requires us to determine whether the scheme established by SORA and its effects have historically been regarded in our history and traditions as punishment. Sex offender registry statutes are a relatively new creation therefore we look to historical equivalents in determining any punitive effects. In *Smith v. Doe*, the United States Supreme Court considered whether the registration requirement was analogous to the colonial punishment of public shaming, humiliation, and banishment.[82] The Court found that historically those punishments involved more than just the dissemination of information and included face-to-face shaming or expul-

sion from the community.[83] It disagreed with the comparison and concluded "[o]ur system does not treat dissemination of truthful information in furtherance of a legitimate government objective as punishment." [84]

¶ 59 In *Doe v. State*, 189 P.3d 999 (Alaska 2008), the Alaska Supreme Court disagreed with the United States Supreme Court's analysis. It found the dissemination provisions of ASORA at least resemble the punishment of shaming. *Id.* at 1012. As mentioned, SORA's information is available on the internet to anyone at any time and for any reason. SORA is different from the ASORA reviewed by the Supreme Court in *Smith v. Doe.* As an example of potential "shaming," Oklahoma law requires certain offenders to have the words "Sex Offender" placed on his or her driver's license.[85] This requirement is predicated upon SORA registration. Showing one's driver's license is frequently necessary in face-to-face encounters when cashing a check, using a credit card, applying for credit, obtaining a job, entering some public buildings, and in air travel as a few examples. This subjects an offender to unnecessary public humiliation and shame and is essentially a label not unlike a "scarlet letter." [86]

¶ 60 In addition, SORA's residency restrictions are similar to the traditional punish-

close his business); Corey Kilgannon, Threats of Violence as Homes for Sex Offenders Cluster in Suffolk, N.Y. Times, Oct. 9, 2006, at B1, available at 2006 WLNR 17438262 (recounting neighborhood's efforts to drive out registrants); Emily Ramshaw, 'Sex Offender' Label Makes No Distinction: For Many Men, Registry Has Lasting and Devastating Effects, Dallas Morning News, Oct. 2, 2006, available at EBSCO, 2W62W61689001016 (stating that registrant has lost multiple jobs after employers learned he was on sex offender registry); Carolyn Marshall, Taking the Law into their Own Hands, N.Y. Times, Apr. 20, 2004, at A12, available at 2004 WLNR 4787938 (describing how residents put pressure on landlords to refuse housing to registered offenders); see also Tewksbury, supra note 81, at 75 (noting that 42.7 percent of respondents reported loss of job and 45.3 percent of respondents reported loss or denial of place to live after being listed on publicly accessible registries); Richard G. Zevitz & Mary Ann Farkas, Sex Offender Community Notification: Managing High

Risk Criminals or Exacting Further Vengeance?, 18 Behav. Sci. & Law 375, 381 (2000) (describing a study consisting of face-to-face interviews with thirty sex offenders throughout Wisconsin subject to various forms of community notification, and noting that 83 percent of respondents reported exclusion of residence and 57 percent reported loss of employment as a direct result of notification).

**82.** *Smith v. Doe*, 538 U.S. 84, 97–98, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003).

**83.** *Smith* 538 U.S. at 98, 123 S.Ct. 1140.

**84.** *Id.*

**85.** Title 47 O.S.2011, § 6–111(D).

**86.** The scarlet letter was a means of punishment which required a person to permanently display the letter "A" for the crime of adultery described

ment of banishment. Section 590 of SORA provides as follows:

A. It is unlawful for any person registered pursuant to the Sex Offenders Registration Act to reside, either temporarily or permanently, within a two-thousand-foot radius of any public or private school site, educational institution, property or campsite used by an organization whose primary purpose is working with children, a playground or park that is established, operated or supported in whole or in part by city, county, state, federal or tribal government, or licensed child care center as defined by the Department of Human Services. Establishment of a day care center or park in the vicinity of the residence of a registered sex offender will not require the relocation of the sex offender or the sale of the property ... Nothing in this provision shall require any person to sell or otherwise dispose of any real estate or home acquired or owned prior to the conviction of the person as a sex offender.

Title 57 O.S. Supp.2012, § 590.

If a person owns a home within a prohibited area and becomes subject to SORA registration, they must vacate the property.[87] The offender does not have to dispose of the property, however, the offender is prohibited from residing on the property (ostensibly allowing a registered offender the ability to be at the residence, but not "reside" on the property). In analyzing this *Mendoza–Martinez* factor, the Supreme Court of Kentucky determined a similar residency restriction was "regarded in our history and traditions as punishment."[88] The court found the restriction expels registrants from their homes even if they resided there prior to the statute's enactment.[89] The Oklahoma version of SORA is even more restrictive than the Kentucky law because the restrictive distance is twice as large as Kentucky's one-thousand-foot distance.

¶ 61 The wide dissemination of the sex offender's information and the displaying of the word "Sex Offender" on a driver's license is at least analogous to the traditional punishment of shaming. The expulsion from one's residence is likewise analogous to the traditional punishment of banishment. Again, we are not making a determination of the constitutionality of any of these individual registration requirements but for purposes of analyzing the second *Mendoza–Martinez* factor we find the totality of these requirements weigh in favor of punishment.

### 3. Finding of scienter

■ ¶ 62 The third *Mendoza–Martinez* factor we consider is whether SORA's obligations are incumbent on a finding of scienter.[90] Section 582 of SORA identifies those sections of the criminal code if violated mandate registration. These are as follows:

A. ... Section 843.5 of Title 21 of the Oklahoma Statutes if the offense involved sexual abuse or sexual exploitation as those terms are defined in Section 1–1–105 of Title 10A of the Oklahoma Statutes, Section 681, if the offense involved sexual assault, 741, if the offense involved sexual abuse or sexual exploitation, Section 843.1, if the offense involved sexual abuse or sexual exploitation, Section 852.1, if the offense involved sexual abuse of a child, 865 et seq., 885, 886, 888, 891, if the offense involved sexual abuse or sexual exploitation, 1021, 1021.2, 1021.3, 1024.2, 1040.12a, 1040.13, 1040.13a, 1087, 1088, 1111.1, 1114 or 1123 of Title 21 of the Oklahoma Statutes.

Title 57 O.S.2011, § 582.

These statutes include sections 1111.1 and 1114 of title 21 of the Oklahoma Statutes which, among other things, cover statutory rape. Statutory rape does not require scienter because it is not a defense that a defendant did not know the victim was under the

by author Nathaniel Hawthorne in his book *The Scarlet Letter*.

87. *OK AG Opinion 2005–11.*

88. *Commonwealth v. Baker*, 295 S.W.3d 437, 444 (Ky.2009).

89. *Id.*

90. Scienter is defined as "[a] degree of knowledge that makes a person legally responsible for the consequences of his or her act or omission;...." SCIENTER, Black's Law Dictionary (9th ed. 2009).

age of consent.[91] However, a majority of the crimes listed in § 582 require scienter. When acknowledging that some triggering crimes do not require scienter, courts have found this factor either does not support a punitive effect or weakly implies a punitive effect.[92] We find that because not all SORA registration triggering crimes require scienter this factor should be given little weight in our analysis.

### 4. Traditional aims of punishment-retribution and deterrence

¶ 63 The fourth *Mendoza–Martinez* factor addresses whether SORA promotes the traditional aims of punishment, e.g., retribution and deterrence. Merely because a statute may deter future crimes does not in and of itself impose a punishment.[93] SORA promotes deterrence through the threat of negative consequences, for example, eviction, living restrictions, and humiliation. Even more compelling than deterrence is the retributive portion of this factor.

¶ 64 As previously determined, the level assignments are prospective and not retroactive. Regardless, it is apparent the level assignments are being **applied** retroactively by the Department. The level assignments as applied herein effectively extended Starkey's SORA registration period. Starkey was initially required to register for 10 years, which was extended to 20 years by the 2004 amendments.[94] Thereafter in 2008, by virtue of the level assignments as applied by the Department, Starkey's registration period was extended for the remainder of his life.[95] Both of these extensions by legislative action were made without any triggering act or alleged violation of law by Starkey.

¶ 65 SORA determines who must register based solely on the criminal statute a person is convicted of violating and not any individual determination of the risk the person poses to the community. In a similar *Mendoza–Martinez* analysis the Supreme Court of Kentucky found "[w]hen a restriction is imposed equally upon all offenders, with no consideration given to how dangerous any particular registrant may be to public safety, that restriction begins to look far more like retribution for past offenses than a regulation intended to prevent future ones."[96] That court also quoted the following from Justice Souter's concurring opinion in *Smith v. Doe:*

> Ensuring public safety is, of course, a fundamental regulatory goal, see, e.g., *United States v. Salerno,* 481 U.S. 739, 747, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), and this objective should be given serious weight in the analyses. But, at the same time, it would be naive to look no further, given pervasive attitudes toward sex offenders, see *infra,* at 1156, n. See *Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981) (*Ex Post Facto* Clause was meant to prevent "arbitrary and potentially vindictive legislation"). The fact that the Act uses past crime as the touchstone, probably sweeping in a significant number of people who pose no real threat to the community, serves to feed suspicion that something more than regulation of safety is going on; when a legislature uses prior convictions to impose burdens that outpace the law's stated civil aims, there is room for serious argument that the ulterior purpose is to revisit past crimes, not

---

91. *Reid v. State,* 1955 OK CR 106, ¶ 43, 290 P.2d 775, 784.

92. *State v. Letalien,* 2009 ME 130, ¶ 44, 985 A.2d 4, 21 (finding that because the obligation to register under Maine's version of SORA was not always triggered by a finding of scienter, this factor supported their registry scheme as being non-punitive); *Doe v. State,* 189 P.3d 999, 1012–1013 (Alaska 2008) (finding the obligations of Alaska's SORA were not imposed solely upon a finding of scienter but a majority of triggering crimes required scienter and therefore this factor weakly implies a punitive effect but would only receive little weight in their analysis).

93. *Smith v. Doe,* 538 U.S. 84, 102, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003).

94. Title 57 O.S. Supp.2004, § 583; 2004 Okla. Sess. Laws. c. 162, § 1.

95. Title 57 O.S. Supp.2008, § 582.5; 2008 Okla. Sess. Laws c. 94, § 1.

96. *Commonwealth v. Baker,* 295 S.W.3d 437, 444 (Ky.2009).

prevent future ones. See *Kennedy, supra,* at 169, 83 S.Ct. 554.

*Commonwealth v. Baker,* 295 S.W.3d 437, 444 (Ky.2009) (quoting *Smith v. Doe,* 538 U.S. 84, 108–09, 123 S.Ct. 1140, 1155–56, 155 L.Ed.2d 164 (2003)) (Souter, J., concurring in the judgment).

¶ 66 In our view, the retroactive extensions of SORA registration clearly appear in the nature of retribution imposed against sex offenders for their past crimes. For all intents and purposes, the extensions are solely based on the statute the offender was convicted without regard to any mitigating factors. No hearing is allowed when making a level designation. Further, there is essentially no mechanism to reduce or end registration based upon a showing the offender is no longer a threat to the community. The few exceptions are for a level 1 offender to petition to have his or her registration period reduced from 15 years to 10 years after being registered for 10 years [97] and for persons convicted of certain statutory rape crimes to petition to be removed from the registry.[98]

¶ 67 In evaluating the fourth *Mendoza–Martinez* factor of retribution and deterrence we find the retroactive extension of SORA's registration based solely upon the individual's prior conviction leads us to weigh this factor in favor of a punitive effect.

### 5. The behavior is already a crime

█ ¶ 68 The fifth *Mendoza–Martinez* factor requires us to determine whether the behavior to which SORA applies is already a crime. As mentioned, SORA registration only applies to offenders convicted of certain crimes and does not arise based on an individualized determination of an offender's risk of recidivism. It cannot be waived based upon proof the offender poses little or no risk. It is the determination of guilt beyond a reasonable doubt of a sex offense, as listed, and not a person's potential for recidivism that triggers the registration requirement.

Therefore, the fact that SORA applies only to behavior that is already a crime supports the conclusion this *Mendoza–Martinez* factor has a punitive effect.

### 6. Rational connection to a non-punitive purpose

█ ¶ 69 The sixth *Mendoza–Martinez* factor we address is whether SORA has a rational connection to a legitimate non-punitive purpose. The 1997 amendments to SORA added legislative findings.[99] Those findings provide SORA is a system created to permit law enforcement to identify and alert the public when necessary for protecting the public safety. The context of these findings is to protect the public from sex offender recidivism. These 1997 findings indicate a legitimate non-punitive purpose of public safety. The protection of its citizens is a basic obligation of state government. Our evaluation of the sixth *Mendoza–Martinez* factor concludes SORA does advance a non-punitive purpose of public safety.

### 7. Excessiveness

█ ¶ 70 The final *Mendoza–Martinez* factor to be addressed concerns whether the obligations imposed by SORA registration are excessive with respect to the non-punitive objective of public safety. The Supreme Court in *Smith v. Doe* described excessiveness as follows:

> The excessiveness inquiry of our *ex post facto* jurisprudence is not an exercise in determining whether the legislature has made the best choice possible to address the problem it seeks to remedy. The question is whether the regulatory means chosen are reasonable in light of the non-punitive objective.

*Smith v. Doe,* 538 U.S. 84, 105, 123 S.Ct. 1140, 1154, 155 L.Ed.2d 164 (2003)

The non-punitive objective revealed in § 581 is to protect the public from sex offenders reoffending after release from custody. This non-punitive objective, while undeniably im-

**97.** Title 57 O.S.2011, § 583(E), added by 2007 Okla. Sess. Laws c. 261, § 27 (eff. Nov. 1, 2007).

**98.** Title 57 O.S.2011, § 590.2, added by 2009 Okla. Sess. Laws c. 404, § 8 (eff. Nov. 1, 2009).

**99.** Title 57 O.S. Supp.1997, § 581(B).

portant, will not serve to render a statute so broad and sweeping as to be non-punitive.[100]

¶ 71 Our inquiry examines the means chosen to carry out this legitimate purpose and determine whether such means are excessive. This determination is based upon the overall scope in its entirety of the obligations imposed as a result of SORA registration.

¶ 72 SORA registration is imposed on a wide variety of crimes of which the severity of the crime and circumstances surrounding each crime can vary greatly. The Department's actions which extended the period of SORA registration have the effect of also extending all requisite obligations. The trial court found Starkey was originally required to register for 10 years. We herein interpret the intent behind the 2004 SORA amendments [101] to extend Starkey's registration period to 10 years following his probation. Thereafter with the 2008 amendments,[102] the Department, without a hearing, extended Starkey's registration period to life. These extensions were made without any individual determination of Starkey's risk of recidivism or threat to the citizens of Oklahoma. The lifetime extension was based solely upon the crime for which he originally entered his plea, or here, the alleged Oklahoma equivalent crime. Starkey timely filed his Petition in August 2009 to reduce his level assignment according to the law in effect at that time. Effective November 1, 2009, the ability to petition for a level assignment reduction was removed by the Legislature.[103] This eliminated any mechanism, other than the few already discussed, for an offender to petition for relief or discharge from the obligation of registration and the many contingent obligations resulting from SORA registration. This is so regardless if one could provide the clearest proof of rehabilitation.

¶ 73 The Department's retroactive application of the level assignment provisions will require Starkey to verify his address "in person" every 90 days for the rest of his life regardless if there is any change to his address. His personal information will be publicly disseminated for the rest of his life. His current address and photograph will be linked to the Department's website showing he is a level 3 offender; this is the most severe level and yet it can cover a wide range of circumstances. A level 3 designation is also the level given to habitual and aggravated sex offenders. Starkey was not found to be either a habitual or aggravated sex offender; in fact he received a deferred adjudication with 60 days in the Calhoun County, Texas Jail. Therefore, Starkey is viewed in the same manner as offenders who have a known risk of recidivism and/or are habitual or aggravated sex offenders. The retroactive application of the level assignments based solely upon the crime committed absent any evidence of reoffending or violation of the requirements of SORA registration are excessive and punitive in nature.

¶ 74 In her analysis of this seventh *Mendoza–Martinez* factor, Justice Ginsburg stated the following in her dissent in *Smith:*

What ultimately tips the balance for me is the Act's excessiveness in relation to its nonpunitive purpose. See *Mendoza–Martinez,* 372 U.S., at 169, 83 S.Ct. 554. As respondents concede, ... the Act has a legitimate civil purpose: to promote public safety by alerting the public to potentially recidivist sex offenders in the community. But its scope notably exceeds this purpose. The Act applies to all convicted sex offenders, without regard to their future dangerousness. And the duration of the reporting requirement is keyed not to any determination of a particular offender's risk of reoffending, but to whether the offense of conviction qualified as aggravated. The reporting requirements themselves are exorbitant: The Act requires aggravated offenders to engage in perpet-

---

**100.** *See Doe v. State,* 189 P.3d 999, 1016 (Alaska 2008).

**101.** Title 57 O.S. Supp.2004, § 583; 2004 Okla. Sess. Laws. c. 162, § 1.

**102.** Title 57 O.S. Supp.2008, § 582.5; 2008 Okla. Sess. Laws c. 94, § 1.

**103.** Title 57 O.S. Supp.2009, § 582.5(D), amended by 2009 Okla. Sess. Laws c. 404 § 4 (eff. Nov. 1, 2009). This amendment removed the ability of a court to reduce a risk level assigned to an offender. Starkey filed his Petition in August 2009 to override his level assignment prior to this amendment.

ual quarterly reporting, even if their personal information has not changed. And meriting heaviest weight in my judgment, the Act makes no provision whatever for the possibility of rehabilitation: Offenders cannot shorten their registration or notification period, even on the clearest demonstration of rehabilitation or conclusive proof of physical incapacitation. However plain it may be that a former sex offender currently poses no threat of recidivism, he will remain subject to long-term monitoring and inescapable humiliation.

*Smith v. Doe,* 538 U.S. 84, 116–17, 123 S.Ct. 1140, 1160, 155 L.Ed.2d 164 (2003) (Ginsburg, J., dissenting) (citations omitted).

¶ 75 We find Justice Ginsburg's dissent persuasive. SORA is more stringent than the ASORA reviewed by the Supreme Court in *Smith.* The Act's many obligations impose a severe restraint on liberty without a determination of the threat a particular registrant poses to public safety. We find SORA's obligations are excessive in relation to its non-punitive public safety purpose and therefore find this factor also favors a punitive effect.

## V. Conclusion Concerning the Constitutional Prohibition Against Ex Post Facto Laws

¶ 76 Here we are not balancing the rights of sex offenders against the rights of their victims. We are making a determination as to whether the means chosen to protect the public have exceeded the state's valid interest in public safety and infringed on the Oklahoma constitutional prohibition against ex post facto laws.

¶ 77 Out of the seven *Mendoza–Martinez* factors we have reviewed herein, five favor a punitive effect. It is not the number that is important but the weight of these factors that leads us to our conclusion. SORA's obligations have become increasingly broad and onerous. We find there is clear proof that the effect of the retroactive application of SORA's registration is punitive and outweighs its non-punitive purpose. The retroactive extension of SORA's registration is

inconsistent with the ex post facto clause in the Oklahoma Constitution.

¶ 78 This is not to say that Oklahoma's Sex Offender Registration Act (SORA) is unconstitutional on its face. A sex offender registry is a valid tool for the state to use for public safety. The State may impose registration duties and may publish registration information as part of its punishment of this category of defendants. The Oklahoma Constitution prohibits the addition of sanctions imposed on those who were already convicted before the legislation increasing sanctions and requirements of registration were enacted.

¶ 79 Our scope is focused on the constitutionality of **retroactively extending SORA registration.** The legislature has continued to move the *finish line* without a hearing and with no change in circumstances. Only by reason of legislative action, Starkey has had his *finish line* moved several times with no demonstrated change of conditions over those that existed when he submitted himself to the jurisdiction and enforcement of the Oklahoma SORA. Having found SORA's effects to be punitive, we find the retroactive extension of its registration period violates the prohibition on ex post facto laws provided in Article 2, § 15 of the Oklahoma Constitution.

## CONCLUSION

¶ 80 The trial court's Order found the provisions of SORA were not to be retroactively applied. The trial court held the Oklahoma Department of Corrections was to apply the version of SORA in existence at the time Starkey pled nolo contendere to the charge of sexual assault on October 12, 1998, in Texas. Under the trial court's Order, Starkey would only be required to register for the original ten-year period which he had already completed.

¶ 81 We agree with the result of the trial court's Order which found the level assignments were not to be retroactively applied and Starkey is only required to register for 10 years. We find the legislature necessarily implied the provisions of 57 O.S., § 583 as amended in 2004 were to be applied retroac-

tively. Further, we find this retroactive extension of Starkey's registration period from 10 years to 10 years from the date of completion of the sentence violates the ex post facto clause of the Oklahoma Constitution.[104] We also find the Department's retroactive **application** of the level assignment provisions of 57 O.S. Supp.2007, §§ 582.1–582.5, as amended, violates the ex post facto clause. These level assignments are only to be applied prospectively. We need not address Starkey's due process violation claims because our holding that the level assignments do not apply retroactively is dispositive.

■■■ ¶ 82 We disagree, however, with the trial court's finding that the date when Starkey pled nolo contendere in Calhoun County Texas, October 12, 1998, is the correct date to determine what Oklahoma law is applicable to him. The Order only indicates he has resided in Oklahoma since 1998. **The correct date to apply is when Starkey became subject to SORA registration by entering and intending to be in Oklahoma after his conviction.**[105] Starkey voluntarily came to Oklahoma and therefore voluntarily subjected himself to SORA after his conviction. Following his conviction, the exact date he entered Oklahoma with the intent to "be in the state" for the requisite period is relevant in determining what version of SORA is applicable. The requirements of the registry to which he must comply would be established upon his entry and intent "to be in" Oklahoma. However in Starkey's case, the applicable provisions of both versions of 57 O.S., § 582 effective during 1998 were the same and the applicable provisions of 57 O.S. Supp. 1997, § 583 were not amended in 1998. Therefore, the **exact** date when Starkey entered Oklahoma in 1998 does not matter for our analysis. We find the trial court's order is affirmed as modified to apply the date of Starkey's entry with the intent to be in this State following his conviction rather than the actual date of conviction in Texas as the

critical point to determine which provisions of SORA would apply to him.

¶ 83 We point out that this decision does not address the requirements of the federal Sex Offender Registration and Notification Act, 42 U.S.C. § 16901 *et seq.* (SORNA).

### AFFIRMED AS MODIFIED

¶ 84 REIF, V.C.J., KAUGER, J., WATT, J., EDMONDSON, J., COMBS, J., and GURICH, J., concur.

GURICH, J., concurs:

¶ 85 I concur. In 1998, the Oklahoma Legislature determined that 10 years was an adequate time for sex offenders like Starkey to remain on the registry in order to protect the public. Starkey was sentenced in 1998 and has remained on the Oklahoma Sex Offender Registration list since that time. Starkey's registration period was set to expire in 2008. However, because of substantive changes in the law, he has remained on the registry for more than 10 years. The record reflects Starkey has not re-offended. The retroactive application of the numerous changes to OSORA transformed the registry into a system of punishment. The dissenters' reliance on *Smith v. Doe*, 538 U.S. 84, 123 S.Ct. 1140 is misplaced because the Alaska registration system reviewed in that case did not have the constitutional infirmities present in this case. The legitimate public safety interest in monitoring sex offender presence in the community is upheld by this decision, while the integrity of the Constitution is maintained.

¶ 86 COLBERT, C.J., concurs in part and dissents in part.

¶ 87 WINCHESTER, J., dissenting (by separate writing) and TAYLOR, J., dissenting.

---

**104.** Okla. Const. art. 2, § 15.

**105.** Title 57 O.S. Supp.1997, § 583(B) was in effect throughout 1998. It states as follows:
"B. Any person who has been **convicted** of an offense on or after November 1, 1989, in another

jurisdiction ... shall register as follows: 1. With the Department of Corrections **when the person enters and intends to be in the state** for thirty (30) days or longer."

¶ 88 TAYLOR, J., dissenting:

The Oklahoma Sex Offender Registry Act is a civil registration provision that reflects the public record and serves to inform citizens of important public information. The legislature clearly intended this to have retroactive application. The Act is a civil, non-punitive, noncriminal regulatory program that does not violate any ex post facto concerns when applied retroactively. *Smith v. Doe*, 538 U.S. 84, 123 S.Ct. 1140, *Connecticut DPS v. Doe*, 538 U.S. 1, 123 S.Ct. 1160. This registration list is not punishment. It is a convenient uniform reflection of the public record. It is one of the many, many unpleasant lifetime civil consequences of being convicted of a felony. The public's right to have this information trumps the discomfort and inconvenience caused to the convicted sex offender.

WINCHESTER, J., dissenting:

¶ 1 The majority states their opinion does not balance "the rights of sex offenders against the rights of the offenders' victims." Yet, according to the Department of Corrections, Appellants, today's decision will affect a number of offenders in the State and will defeat the Act's very purpose which is the protection of victims, and the public at large, from the very real danger of recidivism.[1]

The majority opinion also conflicts with the opinion of the United States Supreme Court in *Smith v. Doe*, 538 U.S. 84, 92, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003), wherein the Court addressed the retroactive application of Alaska's sex offender registry and found the registry did not violate the Ex Post Facto Clause.[2]

¶ 2 The Oklahoma Sex Offenders Registration Act (OSORA), 57 O.S.2011, § 581, *et seq.*, was originally enacted in 1989 and approved unanimously by both the House and the Senate. Oklahoma is not alone in passing legislation that responds to the public safety threat of sex offender recidivism. In 1994, Congress passed the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, which conditions federal funding to assist law enforcement on the States' adoption of established guidelines for state sex offender registration programs. By 1996, legislators in every state had enacted laws to regulate sex offenders after their release, more commonly known as Megan's Laws.[3] *See Smith v. Doe*, 538 U.S. at 89, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003); *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 4, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003). OSORA forms one small piece of a nationwide comprehensive regulatory program.[4]

1. Section 581 of OSORA, as amended, provides in pertinent part:

 B. The Legislature finds that sex offenders who commit other predatory acts against children and persons who prey on others as a result of mental illness pose a high risk of re-offending after release from custody. The Legislature further finds that the privacy interest of persons adjudicated guilty of these crimes is less important than the state's interest in public safety. The Legislature additionally finds that a system of registration will permit law enforcement officials to identify and alert the public when necessary for protecting public safety.

 This stated purpose indicates the intent of the Legislature to establish a civil regulatory system rather than a criminal, punitive system.

2. The Ex Post Facto Clause applies only to statutes that are criminal or penal in nature and prohibits the passing of any law that (1) retroactively imposes punishment for an act that was not punishable when committed, (2) retroactively increases the punishment for a crime after its commission, or (3) deprives one charged with a crime of a defense that was available at the time the crime was committed. *Collins v. Youngblood*, 497 U.S. 37, 42, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990).

3. Megan's Law was inspired by the case of seven-year-old Megan Kanka, a New Jersey girl who was raped and killed by a known child molester who moved across the street from the family.

4. In 2006, the Adam Walsh Child Protection and Safety Act of 2006 ("Adam Walsh Act") was passed by the U.S. Congress to "protect children from sexual exploitation and violent crime, to prevent child abuse and child pornography, to promote Internet safety, and to honor the memory of Adam Walsh and other child crime victims." Pub.L. 109–248 (codified as amended in scattered sections of 42 U.S.C.). Title I of the Walsh Act, entitled the Sex Offender Registration and Notification Act ("SORNA"), created a national sex offender registry law. According to the U.S. Attorney General, the purpose of SORNA was to "strengthen and increase the effectiveness of sex offender registration and notification for the protection of the public, and to eliminate

¶ 3 The United States Supreme Court first addressed the validity of the retroactivity of a state's sex offender registry requirements, the very issue on appeal herein, in *Smith v. Doe*, 538 U.S. 84, 92, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003). The *Smith* Court provided the analytical framework for determining whether a sex offender registration law imposes retroactive punishment in violation of ex post facto laws. The Court held that because the Alaska law at issue was nonpunitive, its retroactive application did not violate the Ex Post Facto Clause. *Smith*, 538 U.S. at 105–106, 123 S.Ct. 1140.

¶ 4 To evaluate a statute's constitutionality under the Ex Post Facto Clause, the first determination a court must make is whether the statutory scheme in question was intended to be civil or criminal in nature. *Smith*, 538 U.S. at 92, 123 S.Ct. 1140. If the intent was to make the statute a criminal punishment, that ends the inquiry and the statute will be deemed to violate the ex post facto laws. *Id.* As stated previously, the Legislature has provided that the civil objective of the Act is to protect the public from harm.[5] 57 O.S.2011, § 581(B). This stated purpose plainly indicates the intent of the Legislature to establish a civil regulatory scheme rather than a punishment.

¶ 5 Because the Legislature intended OSORA to operate as a civil regulatory system, the next step according to the *Smith* Court is to examine whether the statutory scheme is so punitive, either in purpose or effect, as to negate the State's intention to deem it civil. *Smith*, 538 U.S. at 105–106, 123 S.Ct. 1140. "[O]nly the *clearest proof* will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Id.* (Emphasis added).

¶ 6 In determining whether the effects of the Alaska sex offender registry were punitive, the *Smith* Court utilized a multi-factor test first set forth in *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 168–169, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). *Smith*, 538 U.S. at 97, 123 S.Ct. 1140. Recognizing that the factors were not an exhaustive list, the Court found that the five "guideposts" most relevant to its analysis were whether the scheme: (1) "has been regarded in our history and traditions as punishment;" (2) "imposes an affirmative disability or restraint;" (3) "promotes the aims of punishment;" (4) "has a rational connection to a nonpunitive purpose;" or (5) "is excessive with respect to this purpose." *Smith*, 538 U.S. at 97, 123 S.Ct. 1140.

potential gaps and loopholes under the pre-existing standards by means of which sex offenders could attempt to evade registration requirements or the consequences of registration violations." "Applicability of the Sex Offender Registration and Notification Act," 72 Fed. Reg. 8894, 8895 (interim rule Feb. 28, 2007). *See also United States v. Yelloweagle*, 643 F.3d 1275, 1277 (10th Cir.2011) (noting that SORNA was enacted based on Congress's "conclusion that existing sex offender registration and reporting requirements were too readily circumvented"); *U.S. v. Carel*, 668 F.3d 1211, 1213 (10th Cir.2011) ("SORNA was enacted to succeed and enhance the registration requirements of the Wetterling Act, 'and to eliminate' a dangerous gap in the then-existing sex-offender-registration laws.")

SORNA addresses the various tiers of sex offender status and also requires every jurisdiction to maintain a sex offender registry conforming to the requirements of SORNA. *See* 42 U.S.C. §§ 16911 and 16912. The federal standards established under the Walsh Act serve as the minimum standards for a jurisdiction's sex offender registration program to be in compliance with federal law. For those jurisdictions in compliance, federal funding is provided. States failing to establish a registration and notification system in accordance with SORNA risk losing the federal funding. *United States v. Yelloweagle*, 643 F.3d 1275, 1277 (10th Cir.2011); 42 U.S.C. § 16925.

OSORA was amended on November 1, 2007 to substantially comply with the Adam Walsh Act. The amendments required Oklahoma to develop a new risk assessment screening tool to determine the level of risk each offender poses by assigning points for various crimes. 57 O.S. 2011, § 582.5(C). Each offender is now assigned a number of points based solely on the offense of conviction, which then constitutes the individual's risk level. *Id.* The duration requirement for registration is then determined by the level of classification assigned so that level one offenders must register for fifteen years, level two offenders must register for twenty-five years, and level three offenders, and those offenders classified as a habitual or aggravated sex offender, must register for life. *Id.* Section 582.5 was amended again on April 29, 2008, and expanded the applicability to sex offenders who were convicted outside the state, such as Plaintiff Starkey.

5. See supra, fn. 1.

¶ 7 Using this analysis, Division III of the Oklahoma Court of Civil Appeals, the Oklahoma Attorney General's office, the Oklahoma Court of Criminal Appeals, and the 10th Circuit have all [6] found that OSORA's retroactive application does not violate any ex post facto laws.[7] I agree and address each factor in turn.

### A. Historical Punishment

¶ 8 In *Smith,* the Supreme Court· considered Alaska's statute in light of the colonial punishments of public shaming, humiliation, and banishment, and concluded that the dissemination of truthful information in furtherance of a legitimate governmental objective could not be considered punishment. *Smith,* 538 U.S. at 97–98, 123 S.Ct. 1140. The use of the Internet to disseminate sex offender registrant information did not alter the Supreme Court's conclusion. *Smith,* 538 U.S. at 99, 123 S.Ct. 1140. Moreover, any consequences to the offender from such dissemination flow not from the registration but from the fact of conviction, a matter already of public record. The Court found that the rationale behind notification is "to inform the public for its own safety, not to humiliate the offender. Widespread public access is necessary for the efficacy of the· scheme, and the attendant humiliation is but a collateral consequence of a valid regulation." *Id.*

¶ 9 Regulatory schemes such as OSORA are of recent origin and, like the Supreme Court found in *Smith,* are not among traditional punishments. *Smith,* 538 U.S. at 97, 123 S.Ct. 1140. OSORA does not hold sex offenders up to the public for ridicule. Rather, it provides for the dissemination of truthful information in furtherance of a legitimate governmental objective.

¶ 10 Authority to make policy decisions for reasons of public safety and public welfare has long rested with the Legislature and the courts are without authority to strike down a statute merely because it might not comport with its own notions of prudent public policy. *Yocum v. Greenbriar Nursing Home,* 2005 OK 27, 130 P.3d 213. Here, the Oklahoma Legislature adopted amendments to OSORA in accordance with federal legislation, which has been repeatedly upheld as nonpunitive, in an effort to create a national uniform sex offender registration. OSORA's provisions do not resemble traditional punishment and, as such, do not affect the Act's civil status.

### B. Affirmative Disability or Restraint

¶ 11 To determine whether the restriction imposes an affirmative disability or restraint, a reviewing court must consider how the effects of the statute in question are felt by

---

**6.** *See, e.g., Freeman v. Henry,* 2010 OK CIV APP 134, ¶ 11, 245 P.3d 1258 ("We therefore hold OSORA represents a civil regulatory scheme which does not violate the *ex post facto* proscriptions of either" the federal or state constitutions.); Oklahoma Attorney General Opinion No. 03–24 (OSORA is a civil, nonpunitive regulatory scheme); Oklahoma Attorney General Opinion No. 05–11 (OSORA's residency restriction may be applied retrospectively); *Mendenhall v. State,* Case No. F–2010–1100 (Sept. 30, 2011) (Oklahoma Court of Criminal Appeals) (unpublished summary opinion) (using ex post facto analysis, court determined that OSORA was civil and remedial in nature); *Graham v. Henry,* 2006 WL 2645130 (N.D.Okla. Sept. 14, 2006) (refusing to grant sex offender a preliminary injunction where he was unlikely to show that the residency restriction was punitive); *Gautier v. Jones,* 2009 WL 2591666 (W.D.Okla. Aug. 20, 2009) (Because OSORA is nonpunitive, its retroactive application does not violate the Ex Post Facto Clause.), reversed, in part, on other grounds by *Gautier v. Jones,* 364 Fed.Appx. 422 (10th Cir.2010), *cert. denied Gautier v. Jones,* — U.S. ——, 131 S.Ct. 159, 178 L.Ed.2d 39 (2010).

**7.** The Oklahoma Constitution provides that "[n]o ... ex post facto law ... shall ever be passed." Oklahoma Constitution, Art. 2, § 15. The United States Constitution provides that "[n]o State shall ... pass any ... ex post facto Law...." U.S. Const. art. I, § 10, cl. 1. Because the language in these clauses mirrors each other, we interpret the Ex Post Facto Clause in the Oklahoma Constitution consistent with federal Ex Post Facto Clause jurisprudence. Starkey has provided no authority to reflect that the constitution of Oklahoma provides any greater ex post facto law protection than that contained in the federal constitution. Further, the federal Sex Offender Registration and Notification Act, like Oklahoma's law, requires any sex offender who is residing in the State to register and applies to sex offenders convicted before the law's effective date. *See United States v. Hinckley,* 550 F.3d 926, 929 (10th Cir.2008) *abrogated on other grounds by Reynolds v. United States,* 565 U.S. at ——, 132 S.Ct. at 980; 57 O.S.2011, § 582.

those subject to it. *Smith*, 538 U.S. at 99–100, 123 S.Ct. 1140. If the disability or restraint is minor and indirect, its effects are unlikely to be punitive. *Smith*, 538 U.S. at 100, 123 S.Ct. 1140. While the act of registering may cause some inconvenience for offenders, it in no way restrains or disables them. Mere inconvenience does not suffice to make this factor punitive. In reaching its decision, the *Smith* Court expressly rejected the Ninth Circuit Court of Appeals' conclusion that the restraint of the registration system is parallel to that associated with a term of probation or supervised release that implicate *Ex Post Facto* clause concerns. *Smith*, 538 U.S. at 101, 123 S.Ct. 1140.

¶ 12 Further, although OSORA's amendments restrict persons subject to OSORA from living in certain areas or working certain jobs, it does not otherwise restrict the movement and activities of such persons.[8] Offenders remain free to change jobs or move residences within town, out of town or even out of state. Again, any negative consequences to registrants' employment or housing prospects arise from the fact of conviction, not the existence of the registry. *Smith*, 538 U.S. at 101, 123 S.Ct. 1140. It is unclear if such negative consequences would be the result of the registration or if the same result would have been reached through other means, such as routine background checks. *Smith*, 538 U.S. at 100, 123 S.Ct. 1140. It is also important to note that many of the "restraints" identified by Starkey, such as having the words "sex offender" placed on the driver's license of certain sex offenders, as required by 47 O.S.2011, § 6–111(D)(1), do not originate in OSORA. That statute, like several others generally mentioned by offenders, is not a part of OSORA which is the specific Act challenged by Starkey.

¶ 13 Significantly, the registration and notification provisions of OSORA are far less restrictive and burdensome than the commitment statute approved by the United States Supreme Court in *Kansas v. Hendricks*, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501

(1997). In *Hendricks*, the Supreme Court determined that a statute that allowed the state to involuntarily commit certain sex offenders was not a violation of the Ex Post Facto Clause. The Court found that restricting the freedom of those deemed dangerous to society has historically been regarded as "a legitimate nonpunitive governmental objective." *Kansas v. Hendricks*, 521 U.S. 346, 363, 117 S.Ct. 2072, 2083, 138 L.Ed.2d 501, 516 (1997).

¶ 14 The Ex Post Facto Clause does not prohibit increased burdens, only increased punishments. The alleged "burdens" placed on sex offenders under the Act are the unfortunate consequence of the crime for which they were convicted and not an increased punishment. Although the restraints imposed by OSORA are not insignificant, their weight alone is insufficient to create a punitive effect from the Act's nonpunitive purpose.

## C. Promotes the Traditional Aims of Punishment

¶ 15 The third factor addresses whether OSORA promotes the traditional aims of punishment, those of deterrence and retribution. *Smith*, 538 U.S. at 102, 123 S.Ct. 1140. Finding that deterrence alone does not make a statute punitive, the *Smith* Court reasoned that "[a]ny number of governmental programs might deter crime without imposing punishment," and " 'to hold that the mere presence of a deterrent purpose renders such sanctions "criminal" ... would severely undermine the Government's ability to engage in effective regulation." *Id.*

¶ 16 Starkey's argument that differentiating reporting requirements among levels of offenses demonstrates retributive intent was rejected by the Supreme Court in *Smith*. *Smith*, 538 U.S. at 102, 123 S.Ct. 1140. The levels of risk assigned by OSORA are reasonably related to the danger of recidivism and consistent with the Act's regulatory objective. *Id.* To enforce the § 583 risk level amendment as suggested by Starkey, the DOC would be required to examine each sex

---

8. Registered sex offenders may not live near schools, parks, playgrounds, or child care centers, nor may they work in schools, certain law enforcement capacities, or reside with other, non-family registered sex offenders. *See, e.g.*, 57 O.S.2011, §§ 589, 590, and 590.1.

offender's case on an individual basis to determine when they were convicted and what particular version of the statute existed at that time. Such an application would result in different registry terms for offenders convicted of the same crime depending on the date an offender was convicted, if in Oklahoma, or when the offender moved to Oklahoma, if convicted out-of-state.

¶ 17 While the Legislature could have instituted an individualized risk assessment of the danger posed by a sex offender, no constitutional mandate exists requiring the use of such measures. *Smith,* 538 U.S. at 104, 123 S.Ct. 1140 (the decision "to legislate with respect to convicted sex offenders as a class, rather than require individual determination of their dangerousness, does not make the statute a punishment.")

¶ 18 A federal district court in Oklahoma has addressed, and rejected, a similar argument from a sex offender. In *Gautier v. Jones,* Case No. CIV–08–445–C, 2009 WL 1444533 (W.D.Okla., May 20, 2009), the plaintiff contested the very same OSORA amendment, 57 O.S.2011, § 583(C), which changed his registration period from ten years to life due to his new designation as a Tier III offender. The district court held that the plaintiff was not promised that his "registration terms would remain static." *Gautier v. Jones,* at *3. The court further recognized that "the Legislature has broad power to amend existing legislation and was free to alter the statute's registration requirements at any time." *Id.,* citing *Movants to Quash Multicounty Grand Jury Subpoena v. Dixon,* 2008 OK 36, ¶ 22, 184 P.3d 546, 553. The *Gautier* court went on to find that the retroactive application of the OSORA amendment did not violate the Ex Post Facto Clause. *Gautier v. Jones,* at *9.

¶ 19 To deny the amendment's retroactivity will, according to the DOC, require the removal of offenders from the registry, a result that would substantially thwart the very purpose of the Act which is public safety. Because OSORA's purpose is the protection of the public, it reasonably follows that the Act does not significantly promote either retribution or deterrence.

### D. Rational Connection to a Nonpunitive Purpose

¶ 20 The *Smith* Court found that whether the challenged regulation is rationally connected to a nonpunitive purpose is a "most significant factor" in the effects prong of the test. *Smith,* 538 U.S. at 102, 123 S.Ct. 1140. The Court, finding that the statute need not be "narrowly drawn" to pass muster, specifically held that the interest in "alerting the public to the risk of sex offenders in their community" constitutes a "legitimate non-punitive purpose." *Smith,* 538 U.S. at 102–103, 123 S.Ct. 1140. A "statute is not deemed punitive simply because it lacks a close or perfect fit with the nonpunitive aims it seeks to advance." *Smith,* 538 U.S. at 103, 123 S.Ct. 1140.

¶ 21 The Legislature's goal in enacting OSORA was to protect the public from the danger of recidivism, a known high risk among sex offenders. The restrictions set forth in OSORA could reasonably be said to advance this goal. Starkey has proffered no evidence to refute the legitimate public safety interest in monitoring sex offender presence in the community. Accordingly, this factor does not render the Act punitive.

### E. Excessiveness in Relation to Nonpunitive Purpose

¶ 22 The final factor concerns whether the provisions of OSORA are excessive in relation to its previously determined, nonpunitive purpose. As the United States Supreme Court has noted, the excessiveness inquiry of ex post facto jurisprudence is not an exercise in determining whether the legislature has made the best choice possible to address the problem it seeks to remedy. *Smith,* 538 U.S. at 105, 123 S.Ct. 1140. The question is whether the regulatory means chosen are reasonable in light of the nonpunitive objective. *Smith,* 538 U.S. at 105, 123 S.Ct. 1140.

¶ 23 In *Smith,* the U.S. Supreme Court concluded that individual risk assessment was unnecessary for sex offender registration requirements, and that "[t]he State's determination to legislate with respect to convicted sex offenders as a class, rather than require individual determination of their dan-

gerousness, does not make the statute a punishment under the Ex Post Facto Clause." *Smith*, 538 U.S. at 104, 123 S.Ct. 1140. "The Ex Post Facto Clause does not preclude a State from making reasonable categorical judgments that convictions of specified crimes should entail particular regulatory consequences." *Smith*, 538 U.S. at 103, 123 S.Ct. 1140.

¶ 24 There are, no doubt, some cases where a sex offender has led a law-abiding life since his conviction. However, in assessing the constitutionality of a statute, the role of this Court is not to review the merits or wisdom of the Legislature's decisions on matters of public policy. The fact that restrictions on the registrants may be difficult and cumbersome is insufficient to make them unconstitutional.

¶ 25 Nothing in the record before us indicates that OSORA's regulatory scheme is

anything other than reasonable in light of the nonpunitive objective of keeping the public safe from convicted sex offenders. Starkey has not established the "clearest proof" that the limitations in Oklahoma's sex offender registry act are excessive in relation to the Act's legitimate, regulatory purpose.

### F. Conclusion

¶ 26 Having considered the relevant ex post facto factors, I find that OSORA is a nonpunitive, civil regulatory scheme that can be applied retroactively.[9] The registration and notification provisions of OSORA do not violate the Ex Post Facto Clause because the provisions serve the legitimate, remedial purpose of protecting the public.

¶ 27 An overwhelming majority of courts across the country agree.[10] Reliance on a

9. This opinion is limited to the facts of this case wherein Starkey is specifically challenging OSORA's application to him and the amendment lengthening the terms of his registration. Not before us today is the validity of a conviction for a violation to OSORA.

10. The majority of state courts addressing the issue have found that retroactive application of their respective sex offender registries to offenders with convictions that pre-date the statute's enactment is not punitive and/or does not violate the prohibition against ex post facto laws. *See, e.g., Lee v. State*, 895 So.2d 1038 (Ala.Cr.App.2004)(retroactive application of registry's residency requirement did not violate Ex Post Facto Clause); *State v. Henry*, 224 Ariz. 164, 228 P.3d 900 (Ariz.App.2010), review denied (Sept. 21, 2010)(court assumed legislature intended amendments to apply retroactively and did not violate ex post facto laws); *Parkman v. Sex Offender Screening Comm.*, 2009 Ark. 205, 307 S.W.3d 6 (2009)(subsequent, stricter amendments to previously determined non-punitive registry did not violate Ex Post Facto Clause); *People v. Castellanos*, 21 Cal.4th 785, 88 Cal.Rptr.2d 346, 982 P.2d 211 (1999)(court rejected ex post facto challenge to sex offender registry finding registry does not constitute punishment); *Jamison v. People*, 988 P.2d 177 (Colo.App.1999)(registration is remedial, not punitive, and does not unconstitutionally enhance punishment in violation of Ex Post Facto Clause); *State v. Kelly*, 256 Conn. 23, 770 A.2d 908 (2001)(registry is a nonpunitive, statutory scheme that does not violate ex post facto laws); *Smith v. State*, 919 A.2d 539 (Del.2006)(retroactive application of registry statute did not violate Ex Post Facto Clause); *In re W.M.*, 851 A.2d 431 (D.C.2004)(registry established civil, regulatory scheme that was neither

punitive nor a violation of the Ex Post Facto Clause); *Simmons v. State*, 753 So.2d 762 (Fla. 4th DCA 2000)(registry requirements do not constitute punishment in violation of Ex Post Facto Clause); *Frazier v. State*, 284 Ga. 638, 668 S.E.2d 646 (2008)(statute criminalizing failure to register as sex offender did not violate prohibition against ex post facto laws as failure to register was felony entirely distinct from prior conviction for qualifying sex offense and did not increase punishment for the original offense); *State v. Guidry*, 105 Hawai'i 222, 96 P.3d 242 (2004)(statutory scheme not so punitive as to negate regulatory purpose); *Smith v. State*, 146 Idaho 822, 203 P.3d 1221 (2009)(effects of state registry are not punitive and do not violate ex post facto prohibition); *People v. Malchow*, 193 Ill.2d 413, 250 Ill.Dec. 670, 739 N.E.2d 433 (2000)(upholding registry despite fact that it applied retroactively to offenders who committed crimes prior to enactment of registry); *State v. Pickens*, 558 N.W.2d 396 (Iowa 1997)(state supreme court found Iowa's registry nonpunitive and not in violate of Ex Post Facto Clause); *State v. Cook*, 286 Kan. 766, 187 P.3d 1283 (2008)(statutory amendment to registry that increased punishment for failure to register as sex offender not an ex post facto violation); *State v. Trosclair*, 89 So.3d 340 (La.2012)(amendment to registry after sex offender's conviction, which increased supervision term from five years to life and contained stricter electronic monitoring and residency restrictions, was not impermissibly retroactive); *People v. Pennington*, 240 Mich.App. 188, 610 N.W.2d 608 (2000)(registry is neither punitive nor violative of constitutional prohibitions against ex post facto laws); *Garrison v. State*, 950 So.2d 990 (Miss.2006)(retroactive application of nonpunitive, sex offender registry did not violate Ex Post Facto Clause); *Doe. v. Phillips*, 194

S.W.3d 833 (Mo.2006) (state supreme court recognized that Missouri registry, although found to violate unique state constitutional ban on retrospective laws as applied to offenders convicted before statute's enactment, does not violate the Ex Post Facto Clause); *State v. Mount*, 317 Mont. 481, 78 P.3d 829 (2003)(state sex offender registry was nonpunitive, civil statutory scheme that did not constitute prohibited ex post facto legislation); *State v. Harris*, 284 Neb. 214, 817 N.W.2d 258 (2012)(state high court held that retroactive application of registry, and its amendments, did not violate prohibition against ex post facto laws); *Nollette v. State*, 118 Nev. 341, 46 P.3d 87 (2002)(state sex offender registration scheme is civil, not penal, in nature and does not offend ex post facto proscriptions); *State v. Costello*, 138 N.H. 587, 643 A.2d 531 (1994)(state registry was a nonpunitive, civil scheme and its retroactive application did not violate state or federal Ex Post Facto Clauses); *ACLU of N.M. v. City of Albuquerque*, 139 N.M. 761, 137 P.3d 1215 (N.M.App.2006)(state registry is a civil, regulatory scheme that does not violate the Ex Post Facto Clause); *People v. Szwalla*, 61 A.D.3d 1289, 877 N.Y.S.2d 757 (N.Y.A.D. 3.2009)(applying civil, sex offender registry to individuals who committed crimes prior to its enactment does not violate Ex Post Facto Clause); *State v. Bowditch*, 364 N.C. 335, 700 S.E.2d 1 (2010)(state sex offender registry and monitoring program found to be a civil, regulatory scheme whose retroactive application does not violate state or federal Ex Post Facto Clauses); *State v. Meador*, 785 N.W.2d 886 (N.D.2010)(amendment to nonpunitive, state sex offender registration statute does not violate constitutional prohibition against ex post facto laws); *State v. MacNab*, 334 Or. 469, 51 P.3d 1249 (2002)(state sex offender registration was not a form of increased punishment prohibited by Ex Post Facto Clause); *Com. v. Lee*, 594 Pa. 266, 935 A.2d 865 (2007)(lifetime registration, notification and counseling obligations imposed by state sex offender registry was nonpunitive and did not violate ex post facto laws); *State v. Germane*, 971 A.2d 555 (R.I.2009)(registration requirement in state statute does not constitute criminal punishment for purposes of ex post facto analysis); *State v. Walls*, 348 S.C. 26, 558 S.E.2d 524 (2002)(nonpunitive, state registry statutes did not violate Ex Post Facto Clause despite requiring offender to register for first time, twenty-five years after conviction); *Meinders v. Weber*, 604 N.W.2d 248 (S.D.2000)(state sex offender registration laws were remedial, not punitive, for purposes of ex post facto analysis); *Ward v. State*, 315 S.W.3d 461 (Tenn.2010)(state registration requirements are nonpunitive and do not violate Ex Post Facto Clause); *Rodriguez v. State*, 93 S.W.3d 60 (Tex.Cr.App.2002)(state sex offender registry scheme is civil and remedial in nature and does not violate Ex Post Facto Clause); *Kitze v. Com.*, 23 Va.App. 213, 475 S.E.2d 830 (1996)(protecting the public and preventing crime are regulatory, nonpunitive goals of retroactive statute and, therefore, state registry does not violate ex post facto prohibitions); *Fraser v. Sleeper*, 182 Vt. 206, 933 A.2d 246 (2007)(state

sex offender registry statutes are remedial, rather than penal); *State v. Ward*, 123 Wash.2d 488, 869 P.2d 1062 (1994)(Ex Post Facto Clause not violated because applying registry to convictions occurring before its enactment did not constitute punishment); *Haislop v. Edgell*, 215 W.Va. 88, 593 S.E.2d 839 (2003)(state registry is regulatory and does not violate prohibition against ex post facto laws even though applied to persons convicted before its enactment); *State v. Bollig*, 232 Wis.2d 561, 605 N.W.2d 199 (2000)(remedial goal of protecting public outweighs any punitive effect of registration, including any infringement on rights of sex offenders); *Snyder v. State*, 912 P.2d 1127 (Wyo.1996)(state registration of sex offenders for crimes prior to registry's enactment does not offend prohibition against ex post facto laws). *But see Doe v. State*, 189 P.3d 999 (Alaska 2008) (Alaska court found state sex offender registry too punitive to be applied retroactively).

Other state courts in Indiana, Kentucky, Maine, Massachusetts, New Jersey, and Ohio, while generally finding their respective registries do not violate the Ex Post Facto Clause, have delivered differing opinions with respect to amendments to the registries. *See, e.g., State v. Pollard*, 908 N.E.2d 1145 (Ind.2009)(court found retroactive residency restriction too punitive); *Lemmon v. Harris*, 949 N.E.2d 803 (Ind.2011)(amendment to registry imposing lifetime requirements for "sexually violent predators" does not violate the Ex Post Facto Clause); *Com. v. Baker*, 295 S.W.3d 437 (Ky.2009)(residency restriction too punitive when applied retroactively); *Buck v. Com.*, 308 S.W.3d 661 (Ky.2010)(retroactive amendments to registry do not violate ex post facto laws); *State v. Haskell*, 784 A.2d 4 (Me.2001)(a law serving nonpunitive goals is not punishment for purposes of determining whether the law violates ex post facto prohibitions, even though it may bear harshly on those affected); *State v. Letalien*, 985 A.2d 4 (Me.2009)(retroactive application of lifetime registration requirements and quarterly in-person verifications violated Ex Post Facto Clause); *Opinion of the Justices to the Senate*, 423 Mass. 1201, 668 N.E.2d 738 (1996)(state supreme court found that retroactive application of registry notification laws would not violate ex post facto laws); *Com. v. Cory*, 454 Mass. 559, 911 N.E.2d 187 (2009)(retroactive amendment imposing strict GPS monitoring is in violation of ex post facto laws); *Doe v. Poritz*, 142 N.J. 1, 662 A.2d 367 (1995)(court found that retroactive application of registry does not constitute punishment in violation of ex post facto prohibitions); *Riley v. N.J. State Parole Bd.*, 423 N.J.Super. 224, 32 A.3d 190 (N.J.Super.A.D.2011) (lower appellate state court found amendment to previously-declared nonpunitive registry which requires retroactive GPS ankle monitoring to constitute excess punishment); *State v. Cook*, 83 Ohio St.3d 404, 700 N.E.2d 570 (1998) (retroactive application of registry requirements are not punishment in violation of ex post facto laws); *State v. Williams*, 129

small minority of courts and/or dissenting opinions provides little justification to overturn the Legislature's will. Therefore, I respectfully dissent.

Ohio St.3d 344, 952 N.E.2d 1108 (2011) (court found amendments to state registry had become too punitive).

There is also unanimous consensus among the federal circuit courts that SORNA does not violate the Ex Post Facto Clause. *See, e.g., U.S. v. Elkins,* 683 F.3d 1039 (9th Cir.2012); *U.S. v. Felts,* 674 F.3d 599, 606 (6th Cir.2012); *U.S. v. DiTomasso,* 621 F.3d 17, 25 (1st Cir.2010); *U.S. v. Guzman,* 591 F.3d 83, 94 (2d Cir.2010); *U.S. v. Shenandoah,* 595 F.3d 151, 158–159 (3d Cir.

2010); *U.S. v. Gould,* 568 F.3d 459, 466 (4th Cir.2009); *U.S. v. Young,* 585 F.3d 199, 203–06 (5th Cir.2009); *U.S. v. Ambert,* 561 F.3d 1202, 1207 (11th Cir.2009); *U.S. v. May,* 535 F.3d 912, 919–20 (8th Cir.2008), abrogated on other grounds by *Reynolds v. U.S.,* —— U.S. ——, 132 S.Ct. 975, 181 L.Ed.2d 935 (2012); *U.S. v. Hinckley,* 550 F.3d 926 (10th Cir.2008), abrogated on other grounds by *Reynolds v. United States,* —— U.S. ——, 132 S.Ct. 975, 181 L.Ed.2d 935 (2012).